PD-0604-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/21/2015 4:36:48 PM
Accepted 5/22/2015 11:37:05 AM
ABEL ACOSTA
CLERK

No. 07-14-00038-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

PRISCILLA SANDERS,                                             Appellant

v.

THE STATE OF TEXAS,                                           Appellee

Appeal from Swisher County

\* \* \* \* \*

## STATE'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 22, 2015

ABEL ACOSTA, CLERK

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Priscilla Sanders.

*The case was tried before the Honorable Edward Lee Self , 242nd Judicial District Court of Swisher County, Texas.

*Counsel for Appellant at trial was Daniel W. Hurley and David M. Guinn Jr., Hurley & Guinn, 1805 13th Street, Lubbock, Texas 79401.

*Counsel for Appellant on appeal was Aaron R. Clements, Hurley & Guinn, 1805 13th Street, Lubbock, Texas 79401.

*Counsel for the State at trial and on appeal was Tina Davis Rincones, Swisher County Attorney Pro Tem, 109 E 6th Street, Plainview, Texas 79072.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Does a judge make a governmental record with knowledge of its falsity under TEX. PENAL CODE § 37.10(a)(5) when she signs an order containing findings she knows are not true?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

APPENDIX
    Opinion of the Court of Appeals
    State's Exhibit 1 (Order for Emergency Protection)

# INDEX OF AUTHORITIES

**Cases**

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) . . . . . . . . . . . . . . . . . 4

*Phea v. State*, 767 S.W.2d 263 (Tex. App.–Amarillo 1989, pet. ref'd) ... . . . . . . . . 4

*Sanders v. State*, __S.W.3d__, 2015 Tex. App. LEXIS 2513 (Tex. App.–
    Amarillo 2015) (r'hng denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

**Statutes and Rules**

Tex. Code Crim. Proc. art. 17.292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Penal Code § 37.10(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Penal Code § 37.10(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. R. App. P. 66.3(f).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. R. Evid. 801(e)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. R. Evid. 803(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

No. 07-14-00038-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

PRISCILLA SANDERS,                                                    Appellant

v.

THE STATE OF TEXAS,                                                   Appellee

* * * * *

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

**STATEMENT OF THE CASE**

Appellee was convicted of tampering with a governmental record.  The court of appeals reversed, holding the evidence insufficient to prove that appellant knew any of the information contained in the governmental record was false.

1

## STATEMENT OF PROCEDURAL HISTORY

On March 18, 2015, the court of appeals reversed appellant's conviction in a published opinion.[1] The State's motion for rehearing was denied April 17, 2015. The State's petition was due on May 17, 2015, and a motion for extension of time is filed herewith.

## GROUND FOR REVIEW

**Does a judge make a governmental record with knowledge of its falsity under TEX. PENAL CODE § 37.10(a)(5) when she signs an order containing findings she knows are not true?**

## ARGUMENT AND AUTHORITIES

Section 37.10(a)(5) prohibits making a governmental record with knowledge of its falsity. Appellant, a justice of the peace, signed an emergency protective order without any of the statutory requirements being met. However, the order stated "that all necessary prerequisites of law have been legally satisfied."[2] Did appellant knowingly make a governmental record that she knew to contain false information?

It is undisputed that appellant signed a Magistrate's Order of Protection.[3] The order protects her nephew's child.[4] The second line on the pre-printed form is a

---

[1] *Sanders v. State*, __S.W.3d__, 2015 Tex. App. LEXIS 2513 (Tex. App.–Amarillo 2015) (r'hng denied).

[2] Appendix, State's Ex. 1. The order itself begins on page 2 of the exhibit.

[3] 3 RR 85, 89, 90, 93, 95, 97, 103-06, 117.

[4] 2 RR 39; 3 RR 43, 78.

finding that all necessary prerequisites had been met. Appellant knew that one of these prerequisites is an arrest for a specific type of offense, and that there had been no such arrest.[5] Yet, the court of appeals acquitted her because "there is no evidence in this record reflecting that appellant knowingly made a governmental record that she knew to contain false information."[6] The Court's analysis focused on the information that was hand-written into the order—the date, the child's name, the child's residence, etc.—calling it "the sum and total of the information contained within the order."[7] Because there was no evidence that any of these entries were false, "there is no evidence in this record reflecting that appellant knowingly made

---

[5] *See* TEX. CODE CRIM. PROC. art. 17.292(a), (b) (listing prerequisites). As the following exchange explains:

Q. Now, when you put your name on an Emergency Magistrate's Order, you are not to do so unless there has been an arrest for an offense involving family violence or an offense under 22.01, 22.021 or 42.072 of the Penal Code, correct?
A. Correct.
Q. You put your signature on an order, State's Exhibit 1, that you now hold in your hand, prior to an arrest, correct?
A. Correct.

(3 RR 94-95). *See also* 3 RR 84 ("I did not complete [the order] because so far there had not been an act of violence done yet.").

[6] Slip op. at 6. The court of appeals focused exclusively on the falsity of information contained within the order because, in its view, an allegation that the entire document was false cannot be prosecuted under section (a)(5). Slip op. at 6 n.3 ("Such a contention might establish a violation of section 37.10(a)(2)"—which prohibits the making of any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record—but not (a)(5)). The State does not accept this view but, because the court of appeals did not actually reach appellant's claim that the order was not a genuine governmental record, will address the court's holding on its own terms.

[7] Slip op. at 6.

3

a governmental record that she knew to contain false information."[8]

This result is absurd. None of the handwritten entries were made on a blank piece of paper. The first finding made in the order—one included on the form in every emergency protective order from appellant's court—was patently false, and she knew it. It makes no difference whether the information was hand-written or typed; she adopted everything that was in the order at the time she signed it.[9] Ignoring the findings that appellant adopted by her signature is inconsistent with the treatment of police witness statements,[10] admissions of party opponents,[11] and the whole of this Court's jurisprudence on findings of fact. It is almost inconceivable that a judge would be responsible only for the hand-written contents of an order she signs.

By reaching this holding in a published case, the court of appeals has done real damage to basic legal tenets. Worse, it insulates from accountability those who would abuse the judicial power entrusted to them. This departure from the accepted and usual course of judicial proceedings calls for the exercise of this Court's power

---

[8] Slip op. at 6.

[9] Dismissing the pre-printed words in favor of the hand-written ones makes even less sense in this case because most of the hand-writing was someone else's. 3 RR 100-03.

[10] *See* TEX. R. EVID. 803(5) (providing a hearsay exception for statements "made or adopted" by the witness); *Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998) (part of predicate is that the witness must vouch for the accuracy of the written memorandum); *Phea v. State*, 767 S.W.2d 263, 267 (Tex. App.–Amarillo 1989, pet. ref'd) (rule permits use of statements written by law enforcement officers and signed and sworn to by witness).

[11] TEX. R. EVID. 801(e)(2)(B) ("The statement is offered against an opposing party and: . . . (B) is one the party manifested that it adopted or believed to be true.").

4

of supervision.[12]

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals

grant this Petition for Discretionary Review, and that the decision of the Court of

Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

  /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

---

[12]   TEX. R. APP. P. 66.3(f).

5

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 1,590 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of May, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Tina Davis Rincones
Swisher County Attorney Pro Tem
109 E 6th Street
Plainview, Texas 79072
trincones@redraiderlaw.com

Aaron R. Clements
Hurley & Guinn
1805 13th Street
Lubbock, Texas 79401
aaronrc@swbell.net

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney



**APPENDIX**



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00038-CR
_____

PRISCILLA SANDERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Swisher County, Texas
Trial Court No. B-4475-12-12, Honorable Edward Lee Self, Presiding

March 18, 2015

## OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Priscilla Sanders, appeals her conviction for tampering with a governmental record,[1] with intent to defraud or harm another,[2] and resulting sentence of nine months' incarceration in a State Jail Facility, suspended for a period of nine months, and $500 fine. We will reverse.

---

[1] *See* TEX. PENAL CODE ANN. § 37.10(a)(5) (West Supp. 2014).

[2] *See id.* § 37.10(c)(1).

## Factual and Procedural Background

Appellant's nephew, Billy Cruz, has a child, N.G.C., with the child's mother, Alma Gutierrez. In September 2012, Cruz and Gutierrez were not married and were not cohabitating. In accordance with a 2008 order, Gutierrez was managing conservator of N.G.C. with the exclusive right to establish the child's residence without geographical restriction.

In September 2012, appellant's sister and the child's paternal grandmother, Christina Garza, became concerned about the manner in which Gutierrez was caring for N.G.C. As a result of this concern, Garza contacted appellant who had, mere months before, been elected Justice of the Peace of Swisher County, Texas. On September 24, appellant signed an incomplete Emergency Magistrate Order for Protection of N.G.C., and gave the document to Garza. Garza evidently provided a copy of the document to Cruz.

On September 25, Corporal George Brenes of the Amarillo Police Department was dispatched to investigate an alleged harassment. When Brenes arrived at the scene, he encountered Gutierrez, Cruz, and Garza. Either Cruz or Garza provided Brenes the Emergency Magistrate Order for Protection that had been acquired from appellant. In reliance upon this document, Brenes allowed Cruz to take custody of N.G.C.

On September 26, Gutierrez presented a copy of the 2008 custody order to the Tulia Police Department. On the basis of this order, N.G.C. was returned to Gutierrez.

2

After seeing this order and speaking with Gutierrez, an officer contacted the Swisher County Attorney about the event of the preceding days.

The Swisher County Attorney contacted the Texas Rangers about the events that had been reported to him. In the course of its investigation, Ranger Jaime Downs contacted appellant for an interview. During this interview, appellant stated that, while she knew what she had done was ill-advised, the order was never completed, executed, filed, or formally issued by her office.

Appellant was charged by indictment with the offense of making a governmental record with knowledge of its falsity and with the intent to defraud or harm another. After trial, appellant was found guilty of the indicted offense. Subsequently, appellant timely filed a motion for new trial, which was expressly overruled. Appellant then timely filed notice of appeal.

By her appeal, appellant presents four issues. By her first issue, appellant contends that the evidence is insufficient to support the jury's conviction of appellant for the offense of tampering with a governmental record. By her second issue, appellant contends that the evidence is insufficient to establish that appellant acted with the intent to defraud or harm another. By her third issue, appellant contends that the trial court abused its discretion by excluding evidence relevant to appellant's state of mind when she signed the order. By her fourth issue, appellant contends that the trial court erred in failing to conduct a *Batson* hearing despite appellant's *prima facie* showing of a *Batson* violation.

3

Sufficiency of the Evidence

Appellant's first issue contends that the State's evidence is insufficient to establish that she committed the offense of tampering with a governmental record as alleged in the indictment.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899. If a reviewing court determines that the evidence is insufficient to establish any element of the offense, it must reverse and render a judgment of acquittal. *Dean v. State*, 449 S.W.3d 267, 268

(Tex. App.—Tyler 2014, no pet.) (citing *Cuddy v. State*, 107 S.W.3d 92, 95 (Tex. App.—Texarkana 2003, no pet.)); *see Saldana v. State*, 418 S.W.3d 722, 726 (Tex. App.—Amarillo 2013, no pet.).

Appellant was charged with the offense of tampering with a governmental record under Texas Penal Code section 37.10(a)(5), which provides that, "[a] person commits an offense if he makes, presents, or uses a governmental record with knowledge of its falsity." TEX. PENAL CODE ANN. § 37.10(a)(5). The indictment also alleged that appellant committed the offense with the "intent . . . to defraud or harm another," which statutorily elevates the offense from a Class A misdemeanor to a state jail felony. *Id.* § 37.10(c)(1). Thus, in the present case, the State was required to prove that (1) appellant, (2) made, presented, or used, (3) a governmental record, (4) with knowledge of its falsity, and (5) with the intent to defraud or harm another. Appellant presents challenges to the evidence to support that the challenged document was a governmental record, she knew the document to be false, and she acted with specific intent to defraud or harm another. We will limit our analysis to the challenge that is dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

Appellant challenges the sufficiency of the evidence to establish that she made a governmental record "with knowledge of its falsity." TEX. PENAL CODE ANN. § 37.10(a)(5). A person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b) (West 2011). Under section 37.10(a)(5), the knowledge that is required is that the governmental record is

false. Thus, to meet this element, the evidence had to establish that appellant knowingly made a governmental record that she knew to contain false information.[3]

In this case, there is no evidence that appellant signed the Magistrate's Order of Protection on another date than the date indicated. The only other information contained within the document is consistent with information apparently provided by Cruz in what appears to be an application for the order. Included within this information is an identification that N.G.C.'s residence was in Tulia, which would bring the matter within the jurisdiction of appellant's court. No evidence was presented that appellant had any knowledge of the falsity of any of this information. Finally, the order does not identify any "defendant" who had been arrested for family violence and was appearing before the magistrate for the first time following such an arrest. As this is the sum and total of the information contained within the order, there is no evidence in this record reflecting that appellant knowingly made a governmental record that she knew to contain false information. As such, we conclude that the evidence is insufficient to support appellant's conviction. We sustain appellant's first issue.

## Conclusion

Having determined that there is no evidence to support an essential element of appellant's conviction for tampering with a governmental record, we reverse the trial

---

[3] The State argued, at trial, that the challenged document was false because appellant knew that it was not a valid order yet appellant intended it to be taken as a genuine governmental record. Such a contention might establish a violation of section 37.10(a)(2), but it will not support a conviction under section 37.10(a)(5). *See Thompson v. State*, 215 S.W.3d 557, 559 & n.2 (Tex. App.—Texarkana 2007, no pet.); *Mendoza v. State*, No. 05-05-00476-CR, 2006 Tex. App. LEXIS 5060, at *3 & n.1 (Tex. App.—Dallas June 14, 2006, no pet.) (mem. op.).

court's judgment and render judgment of acquittal. *See* TEX. R. APP. P. 43.2(c); *Dean*, 449 S.W.3d at 268.


Mackey K. Hancock
Justice


Publish.

12-527002

# ORDER FOR EMERGENCY PROTECTION

1. Name of Person requesting Protection: *Billy Paul Cruz*
   __VICTIM   ✓VICTIM'S GUARDIAN   __PEACE OFFICER   __STATE'S ATTORNEY

2. Name of Persons to be Protected: *Natalia Guiterrz Cruz*

3. Address(s) of Residence(s): *503 N. Briscoe*
   *Tulia, Tx  79088*

4. Address(s) of Place(s) of Employment/Business: _____

5. Address(s) of school(s) and/or Child-Care Facility: *Highland Park Elem.*
   *15300 E. Amarillo Blvd.*
   *Amarillo, Tx 79108*

6. Is confidentiality of addresses requested: ___ Yes ✓ No

*Billy L. Cruz*
Signature

FILED
2013 NOV 13 PH 5:52

STATE'S
EXHIBIT
1

12-527002

SWISHER COUNTY, TEXAS

## MAGISTRATE'S ORDER OF PROTECTION

On the 24th day of September, 2012, came to be heard the Application of Natalia Guiterrz Cruz, for a Magistrate's Order of Protection.

The Court finds that all necessary prerequisites of the law have been legally satisfied and that this Court has jurisdiction over the parties and subject matter of this cause.

The Court finds that _____, defendant has been arrested for an offense involving family violence behavior and that the following orders are necessary for the safety, welfare, and protection of the applicant and other members of the family or household who are affected by this order.

The Court further finds that _____, defendant is appearing before a Magistrate for the first time after arrest for an offense involving family violence offense under section 47.072 of the Texas Penal Code.

IT IS ORDERED by this Court, pursuant to a Magistrate's Order of Protection, that defendant be immediately prohibited from:

1. Committing acts of family violence behavior against _____, to-wit: commit any act that is intended to result in physical harm, bodily injury, or assault, or that is a that reasonably places the aforesaid in fear of imminent physical harm, bodily injury, or assault:

2. Communicating in a threatening or harassing manner with _____.

3. Going within 200 yards of the following person(s): Natalia Guiterez Cruz _____

4. Going within 200 yards of the following person's locations:

   A. (Person and Residence) Natalia 503 N. Briscoe, Tulia.

   B. (Person and Place of Employment) HPISD _____.

   C. (Residence: Child Care Facility, or School where a child protected under this order resides or attends): HPISD _____

IT IS ORDERED that a copy of this order be sent to the Highland Park Independent School District and the Amarillo Police Department.

12-527002

## Warning

"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE A FELONY PUNISHABLE BY A FINE OF AS MUCH AS $4,000.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE (1) YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO (2) YEARS."

"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS THE COURT CHANGES THE ORDER."

ALL SAID ORDERS CONTAINED HEREIN SHALL CONTINUE IN FULL FORCE AND EFFECT UNTIL THE 24th DAY OF November, 2012. (61 DAYS LIMIT)

SIGNED this 24th day of September, 2012

_____
Presiding Magistrate

RECEIVED this _____ day of _____, _____.

_____
Defendant

Lanette Barnett
received on 9/24/12
Principal Highland Park ISD

# TEXAS DEPARTMENT OF PUBLIC SAFETY
## TEXAS RANGER DIVISION

### WARNING OF RIGHTS

_PS_ 1.    You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial.

_PS_ 2.    Any statement you make may be used as evidence against you in court.

_PS_ 3.    You have the right to have a lawyer present to advise you prior to and during any questioning.

_PS_ 4.    If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during and questioning.

_PS_ 5.    You have the right to terminate the interview at any time.

_PS_      Prior to and during the making of any statement, you knowingly, intelligently, and voluntarily waive the rights set out in this document.

_Priscilla Sanders_
**SIGNED**

_Priscilla Sanders_
**PRINTED NAME**

_10/3/2012_
**DATE**

_11:32 AM_
**TIME**

FILED
2013 NOV 13 PM 5:53

_____
**WITNESS**

_____
**WITNESS**



STATE'S
EXHIBIT

PENGAD 800-631-6989

STATE'S EXHIBIT





### Priscilla SANDERS
**Audio Recorded Confession**



**OFFICIAL OPPRESSION / TAMPER W/ GOV RECORD**
RC-2012-00298

Swisher County
09-24-2012

FILED
2013 NOV 13 PM 5: 53
COUNTY DISTRICT CLERK
SWISHER COUNTY, TEXAS
DEPUTY

JAMIE

| Person | Time | Content |
|---|---|---|
| Ranger Downs | 00:01 | Today's date is Wednesday October 3 and the time is 11:30 A.M. My name is Jaime Downs with the Texas Rangers, Company C in Amarillo. I'm here in Tulia, Texas with visiting with Judge Pricilla Sanders. Judge, will you identify yourself? |
| Pricilla Sanders | 00:18 | My name is Pricilla Sanders, JP for Swisher County. |
| Ranger Downs | 00:22 | Judge, will you agree that it is only me and you in your office? |
| Pricilla Sanders | 00:25 | Yes sir. |
| Ranger Downs | 00:26 | Okay, uh Judge before we start, the uh, I need to, can I borrow your pen there, I need to read you the Miranda Rights. Judge, you have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial. Any statement you make may be used as evidence against you in court. You have the right to have a lawyer present to advise you prior to and during any questioning. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning. You have the right to terminate the interview at any time. Do you understand these rights Judge? |
| Pricilla Sanders | 1:08 | Yes sir     *Ranger Downs: "ok"* |
| Ranger Downs | 1:11 | If you would, would you initial 1 through 5 and sign, print, and date with the time down here for me and then I will witness. |
| Pricilla Sanders | 1:45 | Will you give me the time please? |
| Ranger Downs | 1:46 | Yes, it is 11:32 A.M. |
| Ranger Downs | 2:08 | Prior to and during the making of any statement you knowingly and intelligently and voluntarily waive the rights set out in this document? |
| Pricilla Sanders | 2:15 | Yes Sir |
| Ranger Downs | 2:15 | Do you agree to talk to me today? |
| Pricilla Sanders | 2:16 | Yes |
| Ranger Downs | 2:17 | Okay, if you would, initial that last paragraph for me. Thank you ma'am. Okay Judge, as you remember, last Friday I came in and asked you for all the protective orders you issued for the month of September. You told |

FILED
2013 NOV 13 PH 5: 54
COUNTY CLERK
SWISHER COUNTY

*into your office*



STATE'S EXHIBIT

PENGAD 800-631-6989

| | | |
|---|---|---|
| | | me you hadn't issued any, but you almost issued one. And when I asked you who that was, you told me that it was for your nephew, Billy Paul Cruz, and it was to protect Natalie Gutierrez Cruz, which is his daughter, and you had mentioned an Alma Gutierrez. And when I asked you why you didn't issue it, you told me what? |
| Pricilla Sanders | 3:17 | Because I couldn't serve it onto her. |
| Ranger Downs | 3:19 | You couldn't find her to serve it on her. Okay. Well, I came back today and I advised you that a complaint has been filed regarding Official Oppression and Tampering with a Government Document in the case where you issued a magistrate's order of protection on September 24, 2012 protecting Natalie Gutierrez Cruz and signed it. Now here's the copy I have, would you take a look at it and make sure it's the copy you remember signing? |
| Pricilla Sanders | 4:07 | Yes Sir |
| Ranger Downs | 4:10 | Just real quickly, I was looking over the other copies you gave me as reference, and I noticed you always sign your name as Pricilla Sanders, but on this one you signed it Judge Sanders. |
| Pricilla Sanders | 4:19 | Oh, I didn't know I'd done that. |
| Ranger Downs | 4:22 | You don't know why you did that? That's okay, I was just curious. |
| Pricilla Sanders | 4:28 | Sorry |
| Ranger Downs | 4:29 | That's okay. Okay Judge, what I want you to do, to make it go a little bit smoother, Billy Paul Cruz is your sister's son. |
| Pricilla Sanders | 4:45 | Right, my nephew. |
| Ranger Downs | 4:45 | Which is your nephew. And his daughter, Natalie, would be your great-niece. |
| Pricilla Sanders | 4:52 | Right. |
| Ranger Downs | 4:53 | And Natalie is how old? |
| Pricilla Sanders | 4:54 | Natalie is, I believe she is eight. |
| Ranger Downs | 4:58 | And she was attending Highland Park School in Amarillo? |
| Pricilla Sanders | 5:02 | Right |
| Ranger Downs | 5:04 | And your sister actually works at Highland Park school? |
| Pricilla Sanders | 5:06 | Right |
| Ranger Downs | 5:07 | Okay, how long have you been JP here? |

| | | |
|---|---|---|
| Pricilla Sanders | 5:09 | I have been [counting] seven years I believe. |
| Ranger Downs | 5:13 | Seven years, okay. Are you the only JP in Swisher County? |
| Pricilla Sanders | 5:21 | Yes sir |
| Ranger Downs | 5:22 | How many, and I won't get mad if your not dead on, but how many protective orders have you issued in your seven years? |
| Pricilla Sanders | 5:33 | Don't know, maybe ten? |
| Ranger Downs | 5:37 | Ten? Okay. I know you just told me you're kind of behind on your training, but to become a JP you have to do a little studying, you go to training every year or every other year? |
| Pricilla Sanders | 5:51 | Every year. |
| Ranger Downs | 5:52 | Every year. It's usually somewhere great like South Padre Island isn't it? |
| Pricilla Sanders | 5:58 | Mostly San Antonio or South Padre |
| Ranger Downs | 6:01 | San Antonio or South Padre Island. I like how y'all do that. But you've had training and experience on how and when to issue protective orders. |
| Pricilla Sanders | 6:10 | Right. ok |
| Ranger Downs | 6:11 | Right. I'd like you to go back to September 24, which was a Monday, and explain to me what led to you issuing the protective order. |
| Pricilla Sanders | 6:28 | My sister had called me… |
| Ranger Downs | 6:30 | And what's her name? |
| Pricilla Sanders | 6:31 | Christina. My sister's name is Christina Garza. She's the education coordinator at Highland Park ISD in Amarillo. She's had my great-niece has been staying with her and my nephew for quite a while. They enrolled her at Highland Park, my sister and my nephew did, and she calls me and tells me that Alma was going to check Nat out, out of school. Her and my nephew Billy Paul had been having some problems they've been separated for a long time already. That's why Nat has been staying with Billy Paul. They called Billy and told Billy that Alma was checking Nat out. My sister questioned the school how come they let her check out knowing that she wasn't on any other paperwork for her to be released to her it was just herself (Christina) and Billy that were allowed |

to check her out. And the school actually let her mom check her out of school. My sister was terrified and my nephew was terrified also because they couldn't find her they had no Idea where she was headed to or what her plans were with her. All they knew is that Nat did not want to be with her. That's why she has been staying with my sister. Then they found out that her parents were coming up from Mexico, so they were terrified that they were coming up to take her back to Mexico. (Repeat of last sentence.) So she called me, I panicked, I've had a rough two-and-a-half months. Both of my parents have passed away back-to-back and I panicked myself and I was scared for Nat because she was only eight [starting to cry] sorry. I guess the hardest thing was not knowing where she was at or where she was headed to with her. And knowing that relatives from Mexico were coming down, her parents were and us not knowing if they were taking her back or what their intentions were, where was she gonna be at. So I told her that I would do a protective order, just, I wasn't thinking, I was more terrified for Nat, not knowing where they were gonna take her to or what they were gonna do with her. At this time Billy Paul had got her back because he had found her at McDonald's. My sister went to where Alma works at and noticed that her car was parked there. She asked me what to do and I told her not to go in the building. I said just get the license plates to her vehicle, write down the description of the vehicle, and that way if she does take her, you have a vehicle that you can pinpoint to her with her license plates. She said okay and I said if you do need to go in, do not go by yourself. You and Billy go in together. Don't make a scene or anything, just try to talk to her. Well, Billy Paul was going on to Amarillo and he ended up spotting her at a McDonald's. They were parked at the McDonald's and Alma was parked, I'm not sure what vehicle she was in, but she was in the vehicle with her boyfriend in the passenger seat and she was the driver. Christina said Billy Paul she's at a McDonald's what can we do. I said get her license plates and that's it. Billy Paul was trying to do it where Nat couldn't see him

| | | and Nat ended up spotting him because she was in the back seat and she started screaming for him and trying to get out of her seatbelt and kicking and hollering for her dad, and he went around to the driver's seat to talk to Alma, but Alma wouldn't talk to him so he went back to the passenger seat to try and talk to her boyfriend and he wouldn't talk to him either. So he went to the back door and proceeded to get Nat out of her car seat because she was hollering for him out of her seatbelt. At the same time she takes off in the vehicle with him holding onto the door. So he lets go. I'm not sure how they all ended up at the police department, but they did end up at the Amarillo Police Department, and they gave him Nat there. They gave him to Nat because my sister had showed them the piece of paper and they released her to Bill and they came on home. He went on the next day and he talked to a few attorneys and got all that taken care of and he still had Nat he still wouldn't release her because at this point, Alma had already checked her out of school. She wasn't enrolled in any school so he kept her at home. |
|---|---|---|
| Ranger Downs | 11:42 | Okay, let me back up just a little bit. It's true that Billy had had custody, not custody but possession of Natalie like a month before all this happened correct? |
| Pricilla Sanders | 11:55 | He's had custody of her since summer. So like May. |
| Ranger Downs | 12:00 | But uh, were you aware that there was a standing court order out of Gray County giving Alma primary conservatorship of Natalie? |
| Pricilla Sanders | 12:12 | No I did not know that until I talked to Officer Doyle. Because I called when my sister and I were finding that the police department was looking for him and I told her that I had talked to our DA and he said to call Potter County and see if they could get a protective order for her. So they were trying to get protective order for Potter county because since they both work in Potter County and she goes to school in Potter County. I told her that we should've done it in Potter County. So they did |
| Ranger Downs | 12:52 | Now, it was last Friday and Billy had returned Natalie to Alma, is that correct? Chief Doyle… |
| Pricilla Sanders | 13:07 | Well, he actually didn't her to her, the officer, Officer |

him

| | | |
|---|---|---|
| | | Doyle, went to his house to get Nat. Pick her up. He didn't return her; Alma came down with the officer and picked her up at the house. When he came back, I said you have to go down there. He said I'm not giving her because she does not want to go with her mom, she doesn't want to be with her mom, she's terrified of her mom. I said you have to let her go until you can get custody of her and you can do the proper channels like we're supposed to be doing. So he did hold keep her at his house for two days and finally when, and he had been seeing attorneys, and my sister called me and told me the police department if I knew where they were looking for him, so I made some calls and I talked to Doyle, Doyle said that he needed to talk to him whenever he came back into town. So I called my sister and told my sister to tell Bill to go down there and talk to Officer Doyle and he's going to have to give Nat back to Alma until this is all taken care of because she does have paperwork from Pampa that states she has primary reason and stuff where Nat can live at. She was not aware of any papers either because I asked her and she said "what papers?" I said, "I do not know, I just know that she produced papers that she can decide where Nat resides at." |
| Ranger Downs | 14:32 | Yeah, in fact those papers have been in effect since April 21, 2008 in the 223rd District Court there in Pampa. So Judge, to paraphrase, you were worried about the safety of your grand-niece and you admitted it wasn't the best of ideas to issue a ~~magistrate's~~ protective order because you said understood that in order for you to issue a protective order, in this case it's an order for protection, somebody has to be arrested, somebody has to be in jail, and you have and they have to sign it before it can be filed. Serve it to them |
| Pricilla Sanders | 15:24 | Right |
| Ranger Downs | 15:25 | And that uh, your nephew was able to use this document to interfere with Child Custody and get his daughter back. There's a number at the top right-hand corner of the first page, what's that? The 12, is that your handwriting? |
| Pricilla Sanders | 15:50 | I did not write that. |

| Ranger Downs | 15:52 | Okay, it might be the school's because this copy we got from the school. When you issue a protective order, do you have book where you log it into or do you file it with the clerk's office? |
| --- | --- | --- |
| Pricilla Sanders | 16:07 | I file it with the clerk's office. |
| Ranger Downs | 16:08 | Okay, did you file this one with the clerk's office? |
| Pricilla Sanders | 16:09 | No, because this one was not complete since it was not served on her. |
| Ranger Downs | 16:15 | When did you kinda have buyer's remorse as far as, man I wish I hadn't have done that? |
| Pricilla Sanders | 16:24 | Instantly. wouldn't wouldn't |
| Ranger Downs | 16:25 | Instantly? |
| Pricilla Sanders | 16:27 | When I started thinking clearly, I was like, "I shouldn't have done that." We should've done the proper channel, we should've called PD and I did tell my sister I did it wrong I said we shouldn't have done that. We should've called PD and let PD handle it from this area and see what we could've done from Swisher County. But I panicked knowing that it was in Potter County and I wanted safety between here and Potter County. That's why we started in Potter county, but instantly I did. |
| Ranger Downs | 16:59 | You would agree, because you're a good judge, people like me and you, right or wrong, are held to a much higher standard than everybody else. Especially the public officials because the people vote for you and they trust you with this office and your given immense power and authority over peoples' lives and as you can see, you affected the custody of a child using your office for a family member and you said before we started recording , that, "hey I know I messed up, and I'm willing to do whatever to make this right." |
| Pricilla Sanders | 17:44 | Right |
| Ranger Downs | 17:46 | I can tell you that the story you told me, I believe every bit of it. I believe that you're being utmost honest and I do applaud you for that. Okay? |
| Pricilla Sanders | 17:56 | Thank you |
| Ranger Downs | 17:58 | I did explain to you that the two criminal charges that we're looking at would be Official Oppression which is a Class A Misdemeanor and possibly Tampering with a |

| | | |
|---|---|---|
| | | Government Document which is a state jail felony. I think a lot of, not only public officials, but public employees down to a state trooper, any paperwork you have is a government document; a ticket, a gas meter reading, if it's for the government, if you falsify information or you put information knowing it's falsity and use it, that's a big no-no. Judge, have I promised anything to you for your statement today? |
| Pricilla Sanders | 18:53 | No sir. |
| Ranger Downs | 18:54 | Have I been mean to you? |
| Pricilla Sanders | 18:54 | No sir. |
| Ranger Downs | 18:55 | Not at all? Okay, do you have any questions for me? |
| Pricilla Sanders | 1859 | No |
| Ranger Downs | 19:00 | Okay |
| Pricilla Sanders | 19:05 | Just that I'll do whatever I need to do to get this corrected, because I made a mistake. So I'm gonna be upheld to it. |
| Ranger Downs | 19:13 | Okay, this ends the interview and the time is 11:50 A.M. |