Anthony LaJuan PHEA, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–88–0119–CR.

Court of Appeals of Texas, Amarillo.

March 10, 1989.

---

1. Sallie Inman would have received ¼th of the estate if the will was not admitted to probate and only ⅛th if it was.

Lonnie Markley, Amarillo, for appellant.

James A. Farren, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

POFF, Justice.

A jury convicted appellant Anthony La-Juan Phea of involuntary manslaughter, enhanced by a prior felony conviction, and assessed punishment at confinement for twenty years in the Texas Department of Corrections. By four points of error, appellant contends that (1) the evidence is insufficient to support the conviction because the proof concerning the manner and means of the victim's death varied from the manner and means alleged in the indictment and set forth in the jury charge; (2) the trial court erred in admitting the affidavits of Joyce Booth because those affidavits did not meet the requirements of Tex. R.Crim.Evid. 803(5), the past recollection recorded exception to the hearsay rule; (3) the trial court erred in overruling appellant's objection to statements made by the prosecutor during voir dire because those statements informed the venire of appellant's prior felony conviction; and (4) the prosecutor committed reversible error when he urged the jury to convict appellant on a theory of causation not alleged in the indictment. We disagree, and for the reasons set forth below will affirm the judgment of the trial court.

Joyce Booth, a witness for the State, testified that she passed by the Cotton Club in Amarillo on the night of the crime. She heard someone "hollering" and saw two people fighting in the parking lot. At trial, Booth identified both appellant and the victim, but remembered nothing further about the incident. Over the objection of appellant, the State was allowed to read into evidence two written affidavits given by Booth to police officers within a few weeks after the crime. The affidavits revealed that Booth had seen appellant hitting the victim with a shiny object she believed to be "knucks." Booth watched the attack while the victim cried out for help. No one from the crowd attempted to aid the victim. Booth eventually ran to a phone and notified the police.

Mary Frances Adcock, another witness for the State, also saw appellant hit the victim. She stated that when he was struck, the victim's head "popped backwards" and he fell, hitting his head on the bumper of a car. She saw the victim get up and stumble from car to car. When the victim came to a van, Adcock saw appellant strike the victim again. This time, the victim fell backwards and struck his head on the concrete pavement. On cross-examination, Adcock stated that she never saw appellant hit the victim with anything but his fist, and that she did not see appellant with a weapon.

Dr. Ralph Erdmann, a forensic pathologist, testified that the cause of death was blunt force trauma to the head. In response to a hypothetical question from the

prosecutor, Dr. Erdmann testified that a person who had been struck in the head with a blow from a fist and, as a result of that blow, fell backwards onto a concrete surface striking his head, would incur injuries similar to those found on the head of the victim. Dr. Erdmann also testified that other injuries to the eye and arm of the victim could have been caused by brass knuckles. Those injuries were not caused by a fall to the pavement.

By his first point of error, appellant contends that the evidence is insufficient to support the conviction because the proof concerning the manner and means of the victim's death varied from the manner and means alleged in the indictment and set forth in the jury charge. The indictment alleged that appellant caused the victim's death "by striking the [victim] with a blunt object and with the defendant's fist." The court used identical language in its charge to the jury.

A person is criminally responsible for his conduct if the result would not have occurred but for his conduct. Tex. Penal Code Ann. § 6.04(a) (Vernon 1974). The State was not required to prove that the act alleged in the indictment was the sole cause of the victim's death. *Jones v. State,* 644 S.W.2d 530, 532 (Tex.App.—Corpus Christi 1982, no pet.). There is evidence in the record from which the jury could conclude that the victim's fall to the pavement and resulting head injuries were caused by appellant's blows. We conclude that there is no variance between the cause of death alleged in the indictment and the evidence adduced at trial. *See also Skidmore v. State,* 530 S.W.2d 316 (Tex.Crim.App.1975); *Thompson v. State,* 677 S.W.2d 73 (Tex. App.—Beaumont 1983, pet. ref'd); *Lowe v. State,* 676 S.W.2d 658 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). Appellant's first point of error is overruled.

By his second point of error, appellant contends that the trial court erred in admitting the written affidavits of Joyce Booth, because those affidavits did not meet the requirements of Tex.R.Crim.Evid. 803(5), the "past recollection recorded" exception to the hearsay rule. Appellant argues that the circumstances of preparation cast doubt on the trustworthiness of the affidavits.

As stated earlier, Booth testified that she saw appellant and the victim fighting, but could recall nothing further about the incident. Over appellant's objection, the State read into evidence two affidavits made by Booth within a few weeks of the incident. The statements were taken by Sgt. Morris and Sgt. Geries. Booth testified that she recalled giving the statements. She identified her signature on the statements and testified that the information contained therein was true at the time the statements were given.

Booth also testified that she was under the care of a psychiatrist and had suffered a "nervous breakdown" at the time the statements were given, but that those conditions did not affect her ability to recall facts and events accurately. Sgt. Geries testified that Booth did not tell him that she was under the care of a psychiatrist, and that she displayed no unusual behavior at the time.

Appellant raises several arguments against the trustworthiness of the affidavits. Those arguments will be addressed following a look at Tex.R.Crim.Evid. 803(5) and its origins.

We have found no Texas cases construing Tex.R.Crim.Evid. 803(5), perhaps because of the relatively recent adoption of the rule. There is, however, Federal precedent construing Fed.R.Evid. 803(5), a nearly identical provision in the Federal rules. *See generally* Annotation, Admissibility of Statement Under Rule 803(5) of Federal Rules of Evidence, Providing for Recorded–Recollection Exception to Hearsay Rule, 35 A.L.R.Fed. 605 (1977). The text of the Texas rule is reproduced below. Underlined portions appear only in the Texas rule, while bracketed portions appear only in the Federal rule. The remaining language is common to both.

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had <u>personal</u> knowledge but now has insufficient recollection to enable <u>him</u> [the witness] to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in <u>his</u> [the witness'] memory and to reflect that knowledge correctly, <u>unless the circumstances of preparation cast doubt on the document's trustworthiness.</u> If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The trustworthiness requirement of Tex. R.Crim.Evid. 803(5) was first proposed in Newell H. Blakely, Past Recollection Recorded: Restrictions on Use as Exhibit and Proposals for Change, 17 Hous.L.Rev. 411, 463–65 (1980). The words "unless the circumstances of preparation cast doubt on the document's trustworthiness" were taken from similar language in Fed.R.Evid. 803(6), the "business records" exception to the hearsay rule. Both that rule and Tex. R.Crim.Evid. 803(6) provide in general that records kept in the regular course of business are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

Professor Blakely suggested the trustworthiness requirement of Tex.R.Crim. Evid. 803(5) as a codification of the trial court's duty to carefully evaluate the admissibility of hearsay. That duty was stated by the Court of Criminal Appeals in *Coulter v. State*, 494 S.W.2d 876, 882 (Tex. Crim.App.1973):

> [I]n some circumstances, evidence within the ambit of a recognized exception to the Hearsay Rule is not admissible if it does not have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional right of confrontation and cross-examination.

The drafters of Fed.R.Evid. 803(5), however, believed that a trustworthiness requirement in the Federal rule was not necessary because "[t]he guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them." Advisory Committee's Note, Fed. R.Evid. 803(5), 28 U.S.C.S. appendix at 792 (1988). Stating that "[t]he touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness," the Sixth Circuit has held that the requirements of Fed.R.Evid. 803(5) are, in and of themselves, indicia of trustworthiness. *United States v. Williams*, 571 F.2d 344, 350 (6th Cir.1978).

■ The language "unless the circumstances of preparation cast doubt on the document's trustworthiness" found in Tex. R.Crim.Evid. 803(5) does not require any "indicia of reliability" over and above the other provisions of the rule. The admissibility of hearsay under the past recollection recorded exception remains within the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent an abuse of that discretion.

■ Appellant contends that the affidavits are untrustworthy because they were not taken from Booth verbatim. At trial, Booth testified that, "If I say something, and then, you know, he [Sgt. Geries] will put it the way he wanted to word it, you know." The court faced a nearly identical situation in *Williams*, 571 F.2d at 348–49. The appellant in *Williams* contended that the statement should not have been admitted because it was written by an FBI agent in the agent's own words, then signed by the witness. This argument misconstrued the requirements of Fed.R.Evid. 803(5). Appellant's argument likewise misconstrues the requirements of Tex.R.Crim. Evid. 803(5). Both rules permit the memorandum or record to be *adopted* by the witness when the matter was fresh in the witness' memory. By signing and swearing to the statements at the time she made them, Booth adopted them. She testified that, at the time she signed the statements, the events were fresh in her memory and the statements were accurate. The argument that the statements are not trustwor-

thy because they were not taken verbatim is without merit.

■ Appellant next asserts that the statements are untrustworthy because Booth testified that the only reason she gave the statements was that she was promised by Sgt. Geries that she would not be required to testify at trial. Sgt. Geries refuted her testimony on this point. He testified that, in addition to her statements about the fight, Booth wanted to provide information about some drug cases, and that he promised she could "remain confidential" about that information.

Regardless of whether Booth believed that giving the statements would relieve her from testifying at trial, the statements bear all of the "indicia of reliability" required by Tex.R.Crim.Evid. 803(5). Booth did not recant any portion of the statements at trial and confirmed that the information contained therein was true at the time it was given. The argument that Booth's motivation to give the statements was based upon a desire to avoid testifying, and that the statements are therefore untrustworthy, is without merit.

■ Appellant finally asserts that the statements are untrustworthy because Booth had suffered a "nervous breakdown" and was under the care of a psychiatrist at the time the statements were given. This argument goes to the weight accorded Booth's statements by the jury, and not to their admissibility.

We find the proposition highly questionable that the statements of a witness under the care of a psychiatrist are per se untrustworthy. Booth specifically testified that she was not taking any prescribed medicines for her psychiatric condition at the time she made the statements. Assuming that Booth's "nervous breakdown" and status as a psychiatric outpatient somehow affected the admissibility of her affidavits, a comparable situation was addressed by the court in *United States v. Edwards*, 539 F.2d 689 (9th Cir.1976).

Then writing for the Ninth Circuit, Justice Anthony M. Kennedy held that a statement taken while the witness was drunk was admissible under Fed.R.Evid. 803(5). Unlike this case, there was objective evidence that the witness' faculties were impaired at the time the statement was given. Using a breathalizer, the officers conducting the interview verified the witness' blood alcohol level at .25.

Justice Kennedy noted that (1) the witness recalled making the statement, (2) the witness testified that the statement was accurate at the time it was made, (3) the witness signed the statement at the time it was made and wrote that the statement was true to the best of his knowledge, and (4) one of the officers conducting the interview testified that the witness' answers were not monosyllabic, but consisted of fairly detailed narrations indicating that the witness was capable of recalling past events. The intoxication of the witness was held to go to the weight, and not to the admissibility, of his statement.

■ The analogue of each of those factors is present in this case. Booth testified that she recalled giving the statements, that the information contained therein was true at the time the statements were given, and that she recognized her signature on the statements. Booth signed the statements before a notary public. The jurat on each statement is regular on its face and indicates that Booth signed and swore to the statements as true and correct. Sgt. Geries testified that Booth displayed no unusual behavior indicating that her capacity to give the statements might be impaired. The statements contain the indicia of reliability required by Tex.R. Crim.Evid. 803(5). We find no abuse of discretion by the trial court in admitting the affidavits. Appellant's second point of error is overruled.

■ By his third point of error, appellant contends that the trial court erred in overruling his objection to statements made by the prosecutor during voir dire, because those statements informed the venire of appellant's prior felony conviction. During voir dire, the following statements were made on the record:

[By the Prosecutor]: Now, during the punishment part of the trial, the jury will

be deciding what's the proper punishment for this person, whoever he is, Mr. "X", what's the proper punishment for Mr. "X", this person we have decided committed a crime.

\* \* \* \* \* \*

The person—let's say Mr. "X" is on trial, and the jury finds him guilty. *Now keep in mind I'm talking about a hypothetical case, not necessarily this case. I'm just trying to give you an idea of how the law works.*

If Mr. "X", for instance, had been convicted of a crime sometime in the past, the jury would not hear about that during the first part of the trial.

The reason for that is, we don't want folks being tried for being criminals in general. We don't want the jury to retire back to the jury room and say, "Well, he did the other one, he probably did this one." That's not the question.

The question is, did the evidence in this case prove this crime. Do you see what I'm saying? And that's why it's not fair to start introducing a bunch of other crimes.

Now, there are some exceptions. Sometimes those things become admissible, but as a general rule, if he's been convicted, Mr. "X", of some prior crime, you wouldn't hear about it during the first part of the trial.

If Mr. "X" has been convicted of a crime, during the punishment phase, you would hear about it. And if a person, Mr. "X", Mr. "Y", whoever, if they have been convicted in the past of some other felony, that affects the kind of punishment that they could receive for this felony, the one they are on trial for now.

Now, we anticipate that after all the evidence is presented—well, let me back up.

In any given trial—

[Defense Counsel]: Your Honor, may I approach the Bench, please?

THE COURT: Sure.

Thereupon, the following proceedings were had at the Bench in the presence of, but presumably out of the hearing of the jury panel:

[Defense Counsel]: Your Honor, we object to this line of voir diring in that it informs—and especially due to the last statement the Prosecutor intended to inform the jury that the Defendant has previously been convicted of a felony.

For those reasons, we object to this line of hypothetical questions on increases in the range of punishment, particularly as to the last statement, and saying that informs the jury that he has previously been convicted of a felony offense, as being improper.

THE COURT: The objection is overruled.

Thereupon, the following proceedings were had before the Court and jury, to-wit:

[The Prosecutor]: Now, in any given trial, whether we're talking about Mr. "X" or anyone else, as I mentioned earlier, when all the evidence is in, the Court may decide that the jury should be charged on lesser included offenses. (emphasis added.)

Thereafter, the prosecutor went on to describe the procedure for determining lesser included offenses. The discussion concerning the procedure for enhanced punishment ceased.

Appellant had, in fact, been previously convicted of burglary and that conviction was used to enhance the indictment. Appellant pleaded "not true" to the enhancement paragraph. During the punishment phase of the trial, the jury found that the allegation of the prior burglary conviction was true and accordingly enhanced appellant's punishment.

Citing *Frausto v. State*, 642 S.W.2d 506 (Tex.Crim.App. [Panel Op.] 1982), appellant contends that the prosecutor's statements reproduced above "left no doubt with the jury panel that appellant had a prior felony conviction." *Frausto* held that a prosecutor may not inform the jury panel of the *specific allegations* contained in the enhancement paragraph of an indictment. *Id.* at 509. In *Frausto*, the prosecutor recounted virtually all of the allegations in the enhancement paragraph of the indict-

ment. The court held that the prosecutor's statement was the "functional equivalent" of reading the enhancement paragraph to the venire, a violation of Tex.Code Crim. Proc.Ann. art. 36.01(a)(1) (Vernon Supp. 1989).

In this case, the prosecutor's remarks referred to a hypothetical case used to explain the purpose and function of the punishment phase of trial. The remarks did not inform the venire of appellant's prior conviction for burglary, nor did they mention any of the specific allegations in the enhancement paragraph of the indictment. The trial court properly overruled appellant's objection to the prosecutor's voir dire. Appellant's third point of error is overruled.

 By his fourth point of error, appellant contends that the prosecutor committed reversible error when he urged the jury to convict appellant on a theory of causation not alleged in the indictment. The following exchange occurred during the State's final argument at the guilt-innocence phase of the trial:

> [By the Prosecutor]: Now, the Indictment charges that the victim died as a result of blows with a fist and a blunt object. And you're asked to decide whether he died—one of the things you're asked to decide, did he die as a result of blows from a blunt object.
>
> Dr. Erdmann testified the man died as a result of a blow from a blunt object. *The blunt object was the pavement.*
>
> [Defense Counsel]: Your Honor, I object, because that's a misstatement of the law and the Court's Charge. He has to be struck with a blunt object.
>
> THE COURT: Sustained.
>
> [Defense Counsel]: Thank you, Your Honor. I ask that the jury be instructed to disregard the last statement of the prosecutor.
>
> THE COURT: The jury is so instructed. (emphasis added.)

The substance of appellant's point of error is that the prosecutor's argument concerned matters outside the record, because there was no evidence that appellant struck the victim with a lump of pavement. Ap-

pellant's objection was sustained and the jury instructed to disregard the argument. Appellant did not move for a mistrial. Appellant received all of the relief he requested, and no adverse ruling of the trial court has been presented for review. *Kennedy v. State,* 520 S.W.2d 776, 778 (Tex.Crim. App.1975); *Garcia v. State,* 428 S.W.2d 334, 335 (Tex.Crim.App.1968).

Nevertheless, appellant argues that the harmful effect of the prosecutor's argument could not be cured by instruction. Harm caused by an improper jury argument is generally cured by an instruction to disregard the argument, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed. Whether the argument is harmful enough to warrant a reversal is ultimately determined by its probable effect on the minds of the jurors under the facts of the case. *Blansett v. State,* 556 S.W.2d 322, 328 (Tex.Crim.App.1977).

In this case, the argument outside the record was more in the nature of an inadvertent misstatement by the prosecutor, rather than a deliberate attempt to inject harmful or inflammatory facts not in evidence. The trial court promptly sustained the objection and instructed the jury to disregard the argument. We conclude beyond a reasonable doubt that any harm caused by the improper argument was cured by the court's instruction, and made no contribution to the conviction or to the punishment. Tex.R.App.P. 81(b)(2). Appellant's fourth point of error is overruled.

Having serially reviewed and overruled appellant's four points of error, we affirm the judgment of the trial court.