

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00002-CR

MAURICIO GOMEZ

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. F16-2482-367

----------

## OPINION

----------

In three issues, Appellant Mauricio Gomez appeals his conviction for family-violence assault.  *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2017). We affirm.

## Background

This case arises from a domestic dispute between Appellant and his wife, Lien Lam.  In the evening of February 22, 2013, Lam ran to her neighbor Raquel

Ruiz's house and rang her doorbell. Ruiz testified at trial that when she answered the door, Lam was crying, she appeared nervous and panicky, and there was "fresh blood" on her face. According to Ruiz, Lam told her that Appellant had beaten her up by grabbing her hair and forcing her head into the toilet a couple times. Ruiz also testified that Lam told her that Appellant threatened to kill Lam—a threat that Lam apparently did not take lightly, because Appellant had allegedly stabbed a mattress with a knife during the incident. Ruiz and her husband called 911.

On the other hand, Lam testified that she remembered very little about the night of February 22. Testifying through an interpreter—Lam primarily spoke Vietnamese and could not read or write in English—Lam recalled that Appellant had been drinking that night, that he became angry when he discovered that some of his money was missing, and that he accused her of taking it. She also remembered running to Ruiz's house. Because of her lack of memory, the State also offered Lam's statement to her daughter. At the time Lam gave her statement, Lam's daughter wrote out the statement in English, read it back to Lam in Vietnamese, and then Lam signed it.

The statement read:

> I came home from work when I notice that my husband has been drinking (but I don't know when.) My daughter, Sanya [illegible] he was crying. I asked why they are crying. He said "nothing." I went to the kitchen & took away his whiskey shot. He keeps wanting it back, I denied it, then he went in the shower. He came back after the shower, looked in his wallet, & accused the family of taking his money. He said, "Whoever took it better give it

2

back to me before I kill everyone." I got so scared, I ran out the back door, he grabbed me, pull[ed] me back, and bang my head . . . against the ground. I finally ran out through the backdoor to the front yard. He got into his truck & left. About 30 mins later, he came back & continues . . . talking about his money. He wanted to hit me, so I ran to my neighbor's house. That's when he left again. My neighbor . . . Carlos called the cops. I wanted to call, but I thought, "I always keep calling the cops . . . I don't know if I should."

Officer Gary McCraw responded to the 911 dispatch. Officer McCraw offered testimony related to previous allegations of family violence at Appellant's residence:

[State]. Okay. Did you do a family violence investigation on February 22nd of 2013?

A. I did.

Q. And where was that located at?

A. The assault had occurred at [Appellant's address].

Q. Okay. And what did you know going into that call?

A. I was familiar with the household, as I had worked previous family violence calls there in the past before this.

Appellant's attorney immediately requested a bench conference, and one was held off the record. The jury was then excused, and the trial court spoke with Officer McCraw directly, on the record. The trial court admonished Officer McCraw, through a series of questions, that he should not have mentioned previous family violence calls involving Appellant. Appellant's counsel moved for a mistrial; the trial court denied the motion. The trial court offered to give an instruction to the jury to disregard Officer McCraw's statement, but Appellant's

3

counsel declined the offer, explaining that she felt such an instruction would draw too much attention to Officer McCraw's statement.

Once the jury returned, Officer McCraw continued testifying. He recounted how Lam appeared "[v]ery excited, very upset" that night and appeared to have been crying. He testified that Appellant was not on the scene when he arrived but the couple's children and grandchild, ranging in age from 2 to 18 years old, were at the house and some of them had witnessed the altercation. Officer McCraw interviewed both Lam and Ruiz on the scene but stated that neither of them had made any allegation that Appellant put Lam's head in the toilet.

Officer McCraw also identified photographs depicting the couple's home and Lam's injuries that were admitted into evidence. In the photos of Lam, blood is visible on her sweater and on her hands and an injury to the top of her head is also visible.[1] Photos of the inside of the house depicted blood droplets on the floor of the kitchen and leading out the back door.

Appellant was charged with aggravated assault with a deadly weapon. In addition to the above-described evidence and testimony, Appellant's prior conviction for family-violence assault in March 2011 was admitted into evidence. The jury found Appellant guilty of felony family-violence assault and assessed a nine-year sentence.

---

[1]Officer McCraw clarified that paramedics concluded that her head wound was the result of blunt force trauma, not stabbing.

**Discussion**

Appellant brings three issues on appeal. In his first issue, he argues that the trial court erred by denying his motion for mistrial. In his second issue, he argues that the trial court erred by admitting Exhibit 2—Lam's written statement—because it was inadmissible hearsay. And in his third issue, Appellant argues that his trial counsel was deficient to the extent that he was denied effective assistance of counsel.

## I.  Denial of mistrial

In his first issue, Appellant argues that the trial court erred by denying his motion for mistrial following Officer McCraw's statement that he was familiar with Appellant's household because he "had worked previous family violence calls there in the past before this." Although there is no objection in the record to Officer McCraw's statement, immediately following the statement, Appellant's counsel requested a bench conference. The conference that followed was held off the record, but judging from the trial court's statements and questions of Officer McCraw immediately afterward, the trial court understood Appellant's objection as relating to inadmissible evidence of extraneous offenses.[2] *See* Tex. R. Evid. 404(b). This is also the argument Appellant puts forth on appeal, and

---

[2]Outside the presence of the jury, the trial court asked Officer McCraw, "Were you instructed today not to mention anything about any other case regarding this Defendant?" and "[C]an you see how maybe somebody might interpret [your answer] as trying to inform the jury about prior cases?"

the State does not dispute that this was the concern expressed by Appellant during the conference.

At the conclusion of the conference, the trial court—without ruling on any objection—denied Appellant's motion for mistrial.  But the trial court also offered to instruct the jury to disregard Officer McCraw's statement, an offer that Appellant's counsel declined, expressing a desire to avoid drawing more attention to the statement.  Instead, the following instruction was included in the jury charge: "If you have heard evidence of offenses committed by the defendant other than the one he is on trial for, you may not consider those as evidence of guilt in this case."

Assuming, without deciding, that Appellant's motion for mistrial was sufficient to preserve error for review,[3] we review the trial court's denial of the motion for mistrial for an abuse of discretion and will uphold the ruling if it is within the zone of reasonable disagreement.  *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010), *cert. denied*, 564 U.S. 1020 (2011).  The remedy of a mistrial is intended for a "narrow class of highly prejudicial and incurable errors"—those that would render any further expenditure of time and expense in trying the case wasteful and futile.  *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  It is "an extreme remedy that should be granted only if

---

[3] *See Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013) (holding that a motion for mistrial alone is sufficient to preserve error if a timely objection would not have prevented, and an instruction to disregard would not have cured, the harm flowing from the error).

residual prejudice remains after less drastic alternatives have been explored." *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016) (citing *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009). Evaluating whether a mistrial should have been granted is similar to performing a harm analysis. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). Factors to consider include (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) certainty of conviction absent the misconduct. *Id.* (citing *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).

Officer McCraw admitted to the trial court that he had been instructed prior to testifying not to mention anything about any other case regarding Appellant— thus indicating that the comment was not the result of prosecutorial misconduct. And after Officer McCraw was admonished by the trial court to avoid any reference to "any other offenses that might have occurred with [Appellant]," he made no further mention of such extraneous offenses. No details were provided regarding the "previous family violence calls" Officer McCraw had responded to at the residence. The limited nature of Officer McCraw's statement therefore weighed against a mistrial. *See Vickery v. State*, Nos. 2-04-422-CR, 2-04-423-CR, 2005 WL 2244730, at *5 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op., not designated for publication) (upholding denial of mistrial where witness's statement was isolated, did not provide any particular details, and was not the result of prosecutorial misconduct).

And although Appellant's counsel rejected the trial court's offer to instruct the jury to disregard Officer McCraw's statement during trial, the jury was nevertheless instructed in the court's charge to disregard any evidence of extraneous offenses. Based on our review of the record, we have not found any indication that the jury ignored such instruction. *See Miles v. State*, 204 S.W.3d 822, 827–28 (Tex. Crim. App. 2006) (concluding that, in the absence of evidence to the contrary, it is assumed that the jury followed its written instructions) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)), *cert. denied*, 549 U.S. 1566 (2007).

Finally, if we were to ignore Officer McCraw's statement, the remaining evidence is sufficient to support the conviction. Ruiz testified to Lam's panicked state when she showed up, bloody and crying, on Ruiz's doorstep and told Ruiz that Appellant had beaten her. The jury was also presented with Exhibit 2—the written statement of Lam's recitation of the events to her daughter on the night of the incident—that described how Appellant threatened to "kill everyone" and then, when Lam tried to escape the house, he grabbed her, pulled her back, and banged her head against the ground. And the jury was shown photos of Lam with an injury to her head and blood on her face.

Based on the record before us, we do not believe that Officer McCraw's comment rose to the level of an "extreme" or incurable error such that a mistrial was warranted. *See Jenkins*, 493 S.W.3d at 612. Accordingly, we hold that the

8

trial court did not abuse its discretion by denying Appellant's motion for a mistrial, and we overrule Appellant's first issue.

## II.    Admission of State's Exhibit 2

Appellant argues in his second issue that the trial court erred by admitting Exhibit 2—Lam's purported statement written by her daughter—because it was inadmissible hearsay.[4]  Like our review of the trial court's decision to deny a mistrial, we will review the trial court's admission of evidence for an abuse of discretion.  *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).  So long as the trial court's decision falls within the zone of reasonable disagreement, we will not disturb it.  *Id.*

Hearsay is an out of court statement that a party offers to prove the truth of the matter asserted within the statement. Tex. R. Evid. 801(d).  Hearsay is generally inadmissible unless it falls within one of the enumerated exceptions. Tex. R. Evid. 802 (providing general rule against hearsay), 803 (providing exceptions applicable regardless of whether the declarant is available as a

---

[4]Appellant's brief cites to and discusses rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Tex. R. Evid. 403.  But any objection on the basis of rule 403 was not preserved for our review as it was not lodged in the trial court. Tex. R. App. P. 33.1(a)(1) (requiring a party to present a timely objection in order to preserve a complaint for our review).  We therefore do not address that part of Appellant's second issue that challenges the admission of Exhibit 2 on the basis of rule 403.

witness), 804 (providing exceptions applicable when the declarant is unavailable as a witness).

Appellant admits that if the statements in Exhibit 2 belong to Lam, they are admissible under at least two exceptions to the hearsay rule—the excited utterance exception and the recorded recollection exception. *See* Tex. R. Evid. 803(2) (providing for the excited utterance exception to the hearsay rule), 803(5) (providing for the recorded recollection exception to the general hearsay rule). But the crux of his argument against the admission of Exhibit 2 is that the circumstances do not support a conclusion that Lam made or adopted the statements as her own because she could not read English and she—and the jury—had to trust that Lam's daughter had correctly translated the contents of the statement her daughter had written in English when she read the statement back to Lam in Vietnamese and received confirmation from Lam that the statement was accurate. In other words, according to Appellant, the State failed to prove that the words in the statement were Lam's, as opposed to her daughter's. Thus, Appellant argues, the statements did not meet the hearsay exception for a recorded recollection. We disagree.

Pursuant to rule 803(5), a recorded recollection is a record that

(A)   is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;

(B)   was made or adopted by the witness when the matter was fresh in the witness's memory; and

(C)     accurately reflects the witness's knowledge, unless the circumstances of the record's preparation cast doubt on its trustworthiness.

Tex. R. Evid. 803(5).  In interpreting the predecessor of rule 803(5), the court of criminal appeals has held that the proponent seeking admission of a recorded recollection must satisfy four elements: (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch[5] for the accuracy of the written memorandum.  *Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998).[6] Appellant's argument challenges the fourth element.  In *Johnson*, the court of criminal appeals recognized that the fourth element can be met by a witness's testimony that she remembers recognizing the writing as accurate when she read it at an earlier time.  *Id.*  And, "[a]t the extreme, it is even sufficient if the individual testifies to recognizing her signature on the statement and believes the statement

---

[5]The word "vouch" does not appear in the rule itself but is derived from the requirement that the proponent prove that the writing "accurately reflect the witness's knowledge."  Tex. R. Evid. 803(5).

[6]The *Johnson* decision interpreted rule 803(5) as it appeared in the criminal rules of evidence.  *Id.*  Shortly after the decision was issued, the criminal and civil rules of evidence were consolidated into the Texas Rules of Evidence. Substantively speaking, rule 803(5) remained the same.  *Compare* Tex. R. Evid. 803(5) *with id.* (quoting rule 803(5) as it appeared in the criminal rules of evidence).

is correct because she would not have signed it if she had not believed it [to be] true at the time." *Id.*

Lam's testimony met these requirements. First, Lam testified that she could not remember the night's events. Next, she testified that she told her daughter what happened and her daughter wrote down her description of the incident. Then Lam testified that her daughter then interpreted the statement and read it back to her, and Lam agreed it was accurate and signed it. Finally, when Appellant's counsel asserted, "And so there was no way for you to verify what [your daughter] put in the statement, [was] there?" Lam replied, "Because when the incident happened, I told her the story and then that detail that I provided to her, so she put it in the statement."

As to the question of whether the circumstances of the recording of Lam's statement here "cast doubt on its trustworthiness," courts and scholars agree that this particular phrase in rule 803(5) is superfluous. Olin Guy Wellborn III, *Article VIII: Hearsay*, 30 Hous. L. Rev. 897, 976 (updated by Cathleen C. Herasimchuk in 1993) (describing the phrase "unless the circumstances of preparation cast doubt on the document's trustworthiness" as "innocuous"). The basic assumption underlying all hearsay exceptions, including the recorded recollection exception, is that these types of statements carry with them independent circumstantial guarantees of trustworthiness. *Id.* at 960 (noting "over the course of time, experience has shown that these types of out-of-court statements are generally reliable and trustworthy"). The trustworthiness requirement present in

rule 803(5) is merely a codification of the trial court's duty in every hearsay situation to carefully evaluate the admissibility of the evidence. *Phea v. State*, 767 S.W.2d 263, 267 (Tex. App.—Amarillo 1989, pet. ref'd). Indeed, a trial court has a duty to insure that all hearsay evidence has an indicia of trustworthiness, and if it does not, the trial court should exclude it notwithstanding the fact that it falls within an exception to the hearsay bar—

> [I]n some circumstances, evidence within the ambit of a recognized exception to the Hearsay Rule is not admissible if it does not have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional right of confrontation and cross-examination.

*Coulter v. State*, 494 S.W.2d 876, 882 (Tex. Crim. App. 1973). Because trustworthiness under the circumstances is the "touchstone" for admission of any hearsay evidence that falls within a recognized exception, "[t]he language 'unless the circumstances of preparation cast doubt on the document's trustworthiness' . . . does not require any 'indicia of reliability' over and above the other provisions of the rule." *Phea*, 767 S.W.2d at 267. So despite this language in the rule, the admissibility of hearsay evidence under rule 803(5) "remains within the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent an abuse of that discretion." *Id.*

Here, there was no evidence that Lam's daughter experienced any difficulty in translating her mother's statements into the English language, nor was there any evidence of any motive on Lam's daughter's part to fabricate her mother's statements. To the contrary, Lam's testimony indicated that she was

13

confident that her statement as translated and transcribed by her daughter was accurate. Other than the fact that the statement was given orally in Vietnamese and transcribed and written into the English language, there is no circumstance that has support in this record that would cast doubt on the integrity of that process.

The situation would be no different than if a declarant was able to speak and make a statement in English but was unable to read the English language due to illiteracy. *See Pete v. State*, 501 S.W.2d 683, 686 (Tex. Crim. App. 1973) (upholding admission of illiterate defendant's written confessions that were written down by a peace officer as defendant related his story and read to defendant before he signed them), *cert. denied*, 415 U.S. 959 (1974). Admittedly, to conclude that the statement as written was accurate may require a level of trust, but there is no evidence in this record that such trust was misplaced. Thus, there is nothing in the record to indicate that the trial court acted arbitrarily in finding that the circumstances of the statement did not cast doubt on its trustworthiness.

We therefore overrule Appellant's second issue.

### III.  Ineffective assistance of counsel

In his third issue, Appellant argues that his trial counsel rendered ineffective assistance by

- instructing Appellant to sign an application for probation that stated he had never been convicted of a felony even though trial counsel

14

knew he had a previous conviction for felony driving while intoxicated (DWI);

- failing to timely file pretrial motions;

- failing to object to admission of the 911 call recording as hearsay;

- failing to timely object to extraneous-offense evidence contained in Exhibit 2;

- failing to properly research witness-impeachment evidence of Officer McCraw;

- failing to present any mitigation or character evidence on Appellant's behalf; and

- failing to convey plea bargain offers, failing to disclose and explain the State's Motion for Cumulative Sentences, and failing to review discovery with Appellant prior to trial.

## A. Applicable law

To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*,

9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, without the deficient

16

performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696, 104 S. Ct. at 2069.

## B. Application for probation

Appellant complains that his trial counsel advised him to sign an application for probation that represented, in part, that he had never been convicted of a felony offense when he had been convicted of felony DWI. Appellant argues that this amounts to his attorney "instruct[ing] Appellant to commit Aggravated Perjury."

However, the State points out that Appellant's DWI conviction was on appeal at the time of trial; a fact that is reflected in the record before us. The court of criminal appeals has held that, in interpreting the predecessor statute regarding parole eligibility, the term "convicted of a felony" includes final convictions, not convictions that are on appeal. *Baker v. State*, 520 S.W.2d 782, 783–84 (Tex. Crim. App. 1975). Because we reject Appellant's premise that his attorney instructed him to commit perjury, we decline to hold that Appellant has

17

shown he was rendered ineffective assistance of counsel in this respect and overrule this portion of his third issue.

## C. Pretrial motions

Appellant asserts that his trial counsel rendered ineffective assistance by failing to file certain motions before trial. The record bears out Appellant's contention that trial counsel failed to file certain motions on Appellant's behalf prior to trial. When the trial court asked if Appellant was ready for trial, his trial counsel said she was not and requested a brief continuance because "[she] thought [she] had filed the motions [she] needed to file on [Appellant's] behalf, and [she] did not." Appellant's trial counsel then explained to the trial court that she had filed certain pretrial motions in another case against Appellant and mistakenly thought she had filed those motions in the instant proceeding as well. But because of a fortuitous delay in the proceedings after the jury was selected, Appellant's counsel was able to file several motions, including a motion to suppress and a motion for discovery of evidence in possession of the State.[7]

---

[7]The motions filed were: Defendant's Motion for a Hearing on all Pretrial Motions; Defendant's Motion to Suppress; Defendant's Motion to Insure a Fair Trial; Accused's Motion as to Opening Statements by the State; Motion for Discovery and Inspection of Evidence and Information in the Possession, Custody or Control of the State of Texas; Defendant's Motion to Disclose Alleged Extraneous Offenses Which the State Intends to Introduce at Trial; Defendant's Motion for the Court to Direct Court Reporter to Tare (sic) all Pretrial Proceedings, Voir Dire Examination of the Jury, All Bench Conferences and All Final Arguments; Defendant's Motion to Prohibit State From Mentioning Any Alleged Extraneous Offenses or Extraneous Acts of Misconduct; Defendant's Motion in Limine; Defendant's Motion for Production of Witness Statements at

18

The trial court ruled on all of these motions and granted some, including the motion to suppress. Thus, we fail to see how the delay in filing these motions caused harm.

Appellant seems to imply that his trial counsel's mistake proved that she had not adequately prepared for trial. He argues in particular that her motions related to discovery reveal that she did not attempt to examine evidence in preparation of trial. However, we note that prior to Appellant's counsel filing her belated motions, the State had already filed a rule 404(b) disclosure of extraneous offenses it intended to use, *see* Tex. R. Evid. 404(b), and a notice of expert witnesses it intended to call. The parties also stipulated that the State timely produced a number of items of discovery during the case, including a witness statement (presumably Exhibit 2), a video recording, a 911 call recording, 19 photographs, and "witness contact notes" regarding Ruiz.

We decline Appellant's invitation to speculate as to his trial counsel's degree of preparedness for the case, and we do not find that the record before us supports a conclusion that his counsel rendered ineffective assistance in this respect. *See Menefield*, 363 S.W.3d at 593. We therefore overrule his third issue as it relates to this complaint.

---

the Time of Trial; Defendant's Motion for Production of Evidence Favorable to the Accused; and Motion to Arraign Defendant Out of the Presence of the Jury.

### D. 911 call recording

Appellant next argues that his trial counsel rendered ineffective assistance by failing to object to the 911 call recording, offered through Ruiz's testimony, as inadmissible hearsay. Appellant's trial counsel objected to the recording on the basis that it was not authenticated but did not object to it as inadmissible hearsay. Appellant also argues that the record shows his trial counsel had not adequately prepared for trial because it is obvious (to him) that she had not reviewed the tape.

We again decline to speculate regarding Appellant's trial counsel's preparation for trial without permitting her an opportunity to explain her actions. And, even assuming that the 911 call constituted inadmissible hearsay, there is no indication that admission of the 911 recording deprived Appellant of a fair trial. *See, e.g.*, *Reyes v. State*, 314 S.W.3d 74, 78–79 (Tex. App.—San Antonio 2010, no pet.) (affirming admission of recording of 911 call); *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston 2006, no pet.) (same). The portion of the 911 call played for the jury largely echoed the testimony Ruiz had already given—that Lam arrived at her house, bleeding from the head, and told Ruiz that Appellant had beaten her up. Because Appellant has failed to show a reasonable probability that the outcome of the trial would have differed if the 911 call had been excluded, we overrule this portion of Appellant's third issue. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

### E. Extraneous-offense evidence in Exhibit 2

Appellant next complains that his trial counsel failed to timely object to this statement in Exhibit 2 (Lam's transcribed statement): "I wanted to call, but I thought, 'I always keep calling the cops . . . I don't know if I should.'" Appellant argues that it is inadmissible evidence of extraneous offenses.

Exhibit 2 was admitted just prior to a lunch break in the trial. When the parties returned from their lunch break, Appellant's trial counsel attempted to lodge a belated objection to the excerpted statement and asked that it be redacted from the exhibit. The trial court denied her objection.

Even if we assume, without deciding, that this is an example of deficient performance, Appellant cannot show that it rose to such a level as to change the outcome of the trial. The statement itself is vague—it does not provide information about why Lam was "always . . . calling the cops" or otherwise connect prior calls to Appellant's behavior. Additionally, the State did not emphasize that particular statement or otherwise highlight it to the jury. And, as pointed out above, the trial court, through the jury charge, instructed the jury to disregard any evidence of extraneous offenses. Finally, the jury was presented with evidence during the guilt phase of Appellant's previous conviction for family-violence assault because it was an enhancement to the charge against him. Viewing the record as a whole, we do not find that there was a reasonable probability that, if trial counsel had successfully objected to the statement in

21

Exhibit 2, the result would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. We therefore overrule this portion of Appellant's third issue.

### F. Impeachment evidence against Officer McCraw

Appellant complains that he was harmed by trial counsel's alleged failure to properly research impeachment evidence to be used against Officer McCraw.

During its direct examination of Officer McCraw, the State inquired about his termination from the Oak Point Department of Public Safety. Officer McCraw testified that sometime between February 22, 2013, and the time of trial, "an incident occurred" and Oak Point terminated his employment. Officer McCraw placed the blame on his supervisor and alleged that his supervisor had retaliated against him after Officer McCraw informed the supervisor he intended to retain an attorney. He was subsequently hired by another police department.

Later, Appellant's trial counsel requested a hearing outside the presence of the jury regarding the circumstances of Officer McCraw's termination. The jury was excused and Officer McCraw provided a fairly in-depth description of the events that led to his termination. At the end of the hearing, the trial court asked trial counsel if she intended to address the matter in front of the jury. Trial counsel declined to do so. As the reviewing court, we decline the opportunity to second-guess trial counsel's tactical decision as, in view of the record before us, it does not fall below the objective standard of reasonableness. *See Young v. State*, 991 S.W.2d 835, 837 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1063 (1999); *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (noting that "[i]t is all too

22

tempting for a defendant to second-guess counsel's assistance after conviction . . . and it is all too easy for a court . . . to conclude that a particular act or omission of counsel was unreasonable").

Based on the record before us and without trial counsel's having had an opportunity to present her side of the story, we do not find that trial counsel rendered ineffective assistance in this respect and overrule this portion of Appellant's third issue.

### G. Mitigation evidence

Appellant next alleges that his trial counsel rendered ineffective assistance because she failed to present any mitigation evidence during the punishment phase and allegedly failed to confer with Appellant prior to trial regarding possible character witnesses. Appellant's complaint again asks us to speculate as to trial counsel's preparation for the case. We decline to do so and note that the court of criminal appeals has held that the failure to call witnesses is "irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (citing *Hunnicut v. State*, 531 S.W.2d 618, 625 (Tex. Crim. App. 1976)). We therefore overrule this portion of Appellant's third issue.

### H. Communication

In his last complaint regarding effectiveness of his trial counsel, Appellant alleges that his trial counsel "failed to adequately communicate plea bargain offers, failed to discuss discovery and evidence with Appellant, and failed to

23

explain the potential punishment consequences if the trial court granted the Motion for Cumulative Sentences." But Appellant's complaints relate to circumstances and instances that are outside the record we have before us and are therefore inappropriate for our review on direct appeal. *See Menefield*, 363 S.W.3d at 592–93 (explaining that direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim). We therefore overrule the remainder of Appellant's third issue.

## Conclusion

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL: SUDDERTH, C.J.; MEIER and GABRIEL, JJ.

PUBLISH

DELIVERED: June 21, 2018