

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00433-CR

———————————————————

BRANDON ISAIAH THOMAS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1557994R

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In three nonsufficiency-related points, Brandon Isaiah Thomas challenges his conviction for one count of aggravated assault with a deadly weapon, his conviction for one count of assault on a family member by impeding breath or circulation, and his concurrent sentences of fifteen and ten years' confinement. Tex. Penal Code Ann. §§ 22.01(a)(1), (b)(2)(B), 22.02(a)(2). We affirm.

## Background

Thomas and the complainant lived together with their children but were not married. One night, while the family was living in a motel room, Thomas became angry when the complainant was texting with a male coworker. He came out of the bathroom, pushed her back so that she fell onto the floor, grabbed an air rifle, broke her phone with the air rifle, and used the butt of the air rifle to hit her several times in the face until the air rifle broke. Thomas then held the complainant off the ground by the neck for about two minutes. The complainant's ears began ringing, and her vision faded. But she did not lose consciousness. That night, the complainant could see out of only one eye.

After the attack, the complainant and Thomas cleaned her blood from the motel room's bedroom and bathroom and then went to sleep. The next day, the complainant's mother found the complainant and Thomas by searching motel parking lots in Euless. Thomas would not let the complainant come out of the motel room at first, but he later allowed the complainant to come just outside the door. Although it

was dark, the complainant's mother saw the "[h]orrific" injuries, but the complainant told her mother that three men had attacked her in the parking lot at work.

Three days after the attack, Euless police pulled over the complainant while she was driving away from the motel. Thomas was a passenger in the car; because he had outstanding traffic warrants, the police arrested him. One of the officers asked the complainant about her injuries, so she told the officers about the assaults. The police photographed the complainant's injuries. The complainant then went to a doctor, who diagnosed her with a concussion, nasal-bone fractures, abrasions, and contusions.

A grand jury indicted Thomas for aggravated assault with the air rifle and assault on a family member by impeding breathing or circulation, and a jury found him guilty. The jury assessed his punishment at fifteen years' confinement for the aggravated assault and ten years' confinement for the assault. Thomas challenges both convictions on appeal.

## Nurse's Testimony

In his first point, Thomas challenges a nurse's expert testimony about the cause of the injuries to the complainant's eyes.

Nurse Mary Ann Contreras testified as an expert in domestic violence trauma with a particular emphasis on strangulation as a component of domestic violence. Thomas did not object to Contreras's qualifications, including whether she was qualified to give an opinion on medical causation.

Contreras explained that "strangulation is an external pressure on someone's throat or around their neck that causes a reduced or complete blockage of blood flow going to the brain as well as coming back down from the brain" and can cause the blood vessels to rupture. According to Contreras, visible marks occur in about only half of strangulation cases.

Contreras testified that she had reviewed photographs of the complainant, the police report, the complainant's statement, and a checklist assessing the potential for domestic violence. Based on two of the police photographs of the complainant's neck, Contreras opined that the visible marks were consistent with strangulation caused by the blood vessels' bursting and creating pinpoint bruises under the skin called petechiae. Contreras also testified that photographs of the complainant's lips and the inside of her mouth showed large bruises that appeared to be from blunt force trauma. The inside of her mouth showed petechiae. Contreras further testified that a photograph of the left eye showed "petechiae and large busting of vessels" and agreed that these could have been caused by a buildup of pressure.

When the prosecutor asked Contreras whether she had an opinion "as to whether the injuries to the eyes or the redness to the eyes [were] caused by blunt force trauma or strangulation," Thomas objected to "speculation." The trial judge allowed Thomas's counsel to voir dire Contreras, but only as to her "opinion as to [the] source of injuries in the eye." After his voir dire of the witness, Thomas's counsel objected again "on speculation" because he claimed Contreras was "basing everything on what

4

someone ha[d] told her without doing any type of independent research." The trial judge overruled the objection and instructed the jury to make an independent decision about the opinion's validity. Contreras then testified that in her opinion the injuries to the complainant's eyes were caused by both blunt force trauma and strangulation.

On appeal, Thomas's complaint is two-fold: that Contreras's opinion about the cause of the eye injuries was beyond the scope of her personal knowledge of the case and that as a nurse, she is not qualified to give an opinion on medical causation. We do not address the second part of his argument because he did not preserve it at trial. *See Davis v. State*, 313 S.W.3d 317, 352–53 (Tex. Crim. App. 2010); *Wilson v. State*, 7 S.W.3d 136, 145 (Tex. Crim. App. 1999).

Evidentiary rule 602 allows a witness to testify only if evidence is introduced that supports a finding that the witness has personal knowledge of the matter testified about. Tex. R. Evid. 602. But the rule also "does not apply to a witness's expert testimony" as allowed by rule 703. *Id.* As the court of criminal appeals has explained, "expert testimony serves the purpose of allowing certain types of relevant, helpful testimony *by a witness who does not possess personal knowledge* of the events about which he or she is testifying." *Osbourn v. State*, 92 S.W.3d 531, 535–36 (Tex. Crim. App. 2002) (emphasis added).

Contreras testified extensively about her training and experience related to domestic violence and strangulation in that context. Thomas did not object to Contreras's testifying as an expert on strangulation in a domestic violence context,

5

and he did not object when she testified that the complainant's neck and mouth injuries were consistent with strangulation. Nor was Contreras required to have personal knowledge as an expert witness. Accordingly, we hold that the trial court did not abuse its discretion by overruling Thomas's objection, and we overrule Thomas's first point.

**Mistrial**

In his second point, Thomas claims the trial court committed reversible error by denying his motion for mistrial when the complainant nonresponsively testified that at the time of the assault Thomas had been "doing weekends in jail." When she did so, Thomas's counsel objected, received a favorable ruling, and asked for and received a jury instruction to disregard the statement. After the trial judge instructed the jury to disregard the statement, he asked whether the jury understood his instruction. The record shows that "several" jurors answered yes. The trial judge also asked if the jury could follow that instruction. Again, "several" jurors answered yes. The record does not indicate that any juror said no to either question.

The trial judge then recessed the jury, instructed the prosecutor to ask more precise questions, and admonished the complainant not to "mention that anybody has gone to jail" for any reason except regarding the charges being tried. After discussion, Thomas's counsel moved for a mistrial. The trial judge denied the motion "[b]ased on the jury's demeanor and responses."

As soon as the jury came back into the courtroom, it heard without objection that Thomas had both physically and verbally abused the complainant in the past. The complainant testified about abuse in general as well as about specific incidents that included strangulation.

We review the trial court's denial of a mistrial for an abuse of discretion, keeping in mind that a mistrial is a remedy for "improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). A mistrial is required only in extreme circumstances in which the prejudice is incurable. *Id.* Evaluating whether a mistrial should have been granted is similar to performing a harm analysis. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). Factors to consider include (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) certainty of conviction absent the misconduct. *Id.* (citing *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).

The complainant's reference to Thomas's being in jail was limited, the trial judge did not believe the State had intentionally elicited the testimony, and no witness made similar references during the remaining part of the trial. The jury did not hear any details regarding why Thomas had been in jail, so it did not hear evidence of a more serious extraneous offense than the offense charged. And the jury had also previously heard, without objection, that when the police pulled over the complainant

and Thomas, Thomas had several outstanding—albeit minor—traffic warrants. The jury further heard the trial judge sustain Thomas's objection, and several jurors stated that they understood and could follow the judge's contemporaneous instruction to disregard. While the jury was dismissed from the courtroom, the trial judge acknowledged, "There's a point that even trained judicial officers can't put enough clothes pins on their nose to get rid of the smell. But I'm confident at this point, based on my observations of the jurors . . . that they understand the rules at this point."

Finally, the complainant testified about the attack in detail, and the evidence included photographs taken several days after the attack that still showed marks on her neck and clear, extensive bruising to her eyes, face, and mouth. The complainant's mother saw these injuries the day after the assaults and testified that Thomas had tried to hide the complainant from her. The complainant also testified without objection about Thomas's prior verbal and physical assaults on her. Thus, we have confidence of a high certainty of conviction regardless of the complainant's comment.

The record does not show that the witness's reference was so extreme that any prejudice to Thomas was incurable. *See Gomez v. State*, 552 S.W.3d 422, 428–29 (Tex. App.—Fort Worth 2018, no pet.). Thus, we hold that the trial court did not abuse its discretion by denying Thomas's motion for mistrial, and we overrule Thomas's second point.

**Closing Argument**

Thomas's third point complains about the State's rebutting closing argument. Thomas's counsel had argued that the evidence weighed against a conclusion that Thomas had hit the complainant with the air rifle because the police did not find any blood on it. In rebuttal, the prosecutor argued, "Look, here's the sad thing about this. [She] probably had to clean the blood off this gun . . ." so that the children did not see it. Thomas's counsel objected that the prosecutor was arguing facts not in evidence. In overruling the objection, the trial judge noted, "There's evidence concerning cleaning."

Although closing argument may not include facts not in evidence, an argument that is a reasonable deduction from the evidence is permissible. *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (listing four proper areas of closing argument); *Coleman v. State*, No. 02-17-00123-CR, 2019 WL 2042047, at *10 (Tex. App.—Fort Worth May 9, 2019, no pet.). Here, the complainant had testified that the assault with the air rifle occurred while she and Thomas were in the bedroom/living area of the motel room and that she and Thomas had cleaned both the bedroom and bathroom areas of the one-room motel room after the assault. The complainant also testified that when Thomas put her in the shower after the assaults, "he had blood all over his hands [and b]lood was everywhere." Thus, it is a reasonable deduction from the evidence that Thomas was concerned about the blood on the complainant, the blood in the room, and the blood on objects in the room, and—as part of the

9

cleaning of the small space—the complainant helped clean the air rifle. *See Temple v. State*, 342 S.W.3d 572, 605 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). We overrule Thomas's third point.

## Conclusion

Because we have overruled Thomas's three points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 29, 2019