

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0477-19

## ISSAC WILLIAMS, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## BEXAR COUNTY

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, KEEL, and SLAUGHTER, JJ., joined. YEARY, J., filed a dissenting opinion in which WALKER and MCCLURE, JJ., joined.

After a jury trial, Issac Williams was found guilty of continuous trafficking of persons and was sentenced to fifty years in prison. Williams had testified that he committed no offense at all. The court of appeals held that the trial court erred in denying his request for a jury instruction on the lesser-included offense of human trafficking of persons, reversed

the judgment of the trial court, and remanded the cause for a new trial.[1]

We have previously held that a trial court has no duty to *sua sponte* instruct on a lesser-included offense.[2] Requests for such instructions are matters of trial strategy that are treated like defensive instructions.[3] Accordingly, it is incumbent upon defense counsel to preserve error on his requested instruction.[4] Williams failed to preserve error in this case because he failed to point to the specific evidence in the record that raised the lesser-included offense, even after he was asked to do so by the trial court. We will reverse and remand.

## Trial

Appellant was accused of the continuous trafficking of B.F., a minor. This required proof that, during a period that was 30 or more days in duration, Appellant engaged two or more times in conduct that

---

[1] *Williams v. State*, 582 S.W.3d 612, 614–15 (Tex. App.—San Antonio 2019).

[2] *Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010).

[3] *Id.*; *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007) (explaining that a trial judge does not have a *sua sponte* duty to instruct the jury on all potential defensive issues, lesser included offenses, or evidentiary issues—as these issues frequently depend upon trial strategy and tactics). *See also Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (*Almanza*'s harm standards do not apply when a defendant fails to object to the absence of a defensive issue in the jury charge because the trial court will have committed no error at all, given that "not every defense-benefitting instruction is 'law applicable to the case.'").

[4] *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (holding that a trial court is not statutorily required to *sua sponte* instruct the jury on a mistake of fact "defensive issue" because a "defensive issue" is not "applicable to the case" unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge).

constitutes an offense under Section 20A.02 ("trafficking") against B.F.[5]

At trial, B.F. testified that she ("Amber") and Deborah Ameia Cooper ("Kandy") were "adult escorts" handled by Appellant. B.F. said she was fifteen when she met Appellant on social media; Appellant was in his late twenties. B.F. and Appellant messaged each other for several months before meeting in December 2013 at a park in Killeen, Texas. The park was within walking distance of the apartment B.F., by then sixteen, shared with her mother. B.F. and her mother had gotten into an argument, and her mother had "kicked her out."

B.F. said she and Appellant talked for about an hour in his Cadillac. Appellant asked B.F. about her past sexual experiences, and B.F. told him about prostituting in Maryland when she was thirteen. Appellant said he would take care of her—give her a life better than she had with her mother. B.F. testified they had sex in the car, and Appellant later took her to a hotel, "when the actual and real conversation came up" of what she was actually going to be doing.

On his phone, Appellant pulled up "backpage.com" ("Backpage") and showed her the adult escorts advertisements. Appellant explained

---

[5] TEX. PEN. CODE § 20A.03; TEX. PEN. CODE § 20A.02.

the process of placing ads to find customers and how B.F. could get started and make some money. Appellant introduced her to twenty-year-old Cooper, took the pair to the store to buy "cute underwear," and took photos to create a Backpage advertisement. B.F. testified they used gift cards to pay for the twelve-dollar ads. Because they were "competing with over 50,000 girls from all different countries, states, cities," they had to keep placing ads to get theirs noticed because "you have to get [on] the first three pages in order for someone to call you, which is basically the client. And then, you just proceed from there."

Over three thousand pages of Backpage records were introduced as an exhibit at trial. The records included copies of hundreds of Backpage ads that had run from December 9, 2013, to August 14, 2014. The ads included Cooper's email address[6] and, starting in late December 2013, photos of B.F. and Cooper, and a message, either from B.F or Cooper, advertising a "good time" in a "more upscale atmosphere." Cost was listed by time. Some offered a "two-girl special" and represented the poster of the ad's age as "20." Most were invoiced to Cooper under the name "Kandy," but some of the ads that ran from July 20 to August 5,

---

[6] The birthday associated with that email account was Appellant's. So was the backup email address.

2014 were invoiced to Appellant.

B.F. said Appellant would drive them in traffic to different cities along the I-35 corridor to meet clients. Appellant set the prices depending on which city they were in. Appellant set a goal of $600 daily for B.F. and $800 for Cooper. B.F. corresponded with Appellant by text; they used code to communicate about the dates. B.F. and Cooper would stay in a hotel room while Appellant either waited in his Cadillac or stayed in his own hotel room. The clients never saw Appellant; B.F. was never to tell the clients she had a pimp. Cooper would either "be in the room if the client was okay with it," or "step outside the room and go down the hall, but she had to stay close just in case she had a client." "And we would kind of swap back and forth." B.F. testified they worked every day except Sundays, when they would go to church to see Appellant's father preach.

Department of Public Safety Special Agent Shawn Hallett, meanwhile, was looking for juvenile victims of human trafficking. He enlisted the help of Sergeant John Elizarde, an investigator at the Texas Attorney General's (AG) Office. Hallett told the jury they reviewed ads on Backpage and looked for images of possible minors, and then would try to identify the person using phone numbers, social media, and other

databases. During the investigation, they found one of the ads featuring "Amber" and "Kandy" and believed the images depicted a minor. From Facebook, the men concluded that "Amber" was B.F. and "Kandy" was Amelia Cooper. B.F., they learned, was a minor, a "runaway out of Killeen." Using the contact information in the ad, Hallett called Cooper and arranged a session in San Antonio. But when it was time to meet up, Cooper did not answer her phone, so the sting could not be carried out.

Hallett next arranged a session at a hotel in Killeen for August 19, 2014. He requested the "two-girl special" for the date. Hallett was let in the side door of the hotel by Cooper. Hallett started to follow her up the stairwell, at which point the AG's office took Cooper into custody. Elizarde found out what room the girls were working out of, and then the two men, together with Sergeant Stormye Jackson, located B.F. in the room and arrested her on a warrant. B.F. was "really surprised and really overjoyed" that they'd found her. Jackson interviewed B.F., who revealed the details of the trafficking scheme. A search of the room turned up three phones, a receipt indicating the room was registered to Cooper, multiple cell phones, and, in a drawer, condoms and personal lubricant.

As B.F. was being escorted out of the hotel by the agents, Appellant drove his distinctive Cadillac into the parking lot. B.F. had a "complete

meltdown"; she directed the agents' attention to him, saying "That's him. That's Issac."[7]  Appellant was arrested.  Agents found thirteen gift cards in his wallet that had been used for "hotel rooms and [Backpage] ads." They found, on his person, a receipt for a hotel in San Antonio, where the trio had been just before Killeen.  In his car, they found four phones, one with a history of activity on Backpage.  They also found a box of condoms in his trunk—the same kind found in the hotel room.  Texts on some of the collected phones contained the code B.F. testified the trio used to communicate, as well as straight-forward communications that referenced rides and in-and-out calls.  Other phones' browser histories documented bookings for hotels.

Appellant testified in his defense.  Before Appellant testified, the defense had laid out a theory through cross examination that B.F. and

---

[7] B.F. testified:

> And then, just as they were sitting there talking to me, I see Issac pull up. But at first, I knew he was coming. I'd seen his car. But first, he pulled up to the side door and then to the front entrance of the hotel. And immediately, I start freaking out because he's really big on not telling the police, the feds anything about what we're doing. He told me, "If you get caught, deny everything because if you get caught, it's a misdemeanor for probation. So, if you get caught, you go to jail, I will bail you out, and then, we'll just keep going." And so, when I had seen him, I told them—I was like, "You got to move me somewhere else." I was saying, "You got to move me somewhere else because if he sees me, I'm going to be in like big ass trouble." And they were like, "Okay. We're going to move you somewhere else."

Cooper were in a relationship; that the scheme was B.F.'s and Cooper's alone; and that, but for the lack of a thorough investigation, law enforcement would have discovered that. Appellant testified that he did not commit any crime. He said he never had sex with B.F., "had no idea about Backpage," and never trafficked B.F. or Cooper. He claimed he had no idea B.F. and Cooper had been prostituting themselves, "no suspicions or anything like that." He thought Cooper was out "braiding hair" and hanging out with B.F. "They hung out a lot." He had "no connection" with B.F. and in fact had, early on, blocked her on Facebook because she was coming on to him.[8] When B.F. was at the apartment he shared with Cooper, it was to hang out with Cooper. He had his own friends.

Appellant had explanations for everything. He had the gift cards in his wallet because Cooper had just given him them because she'd come to think B.F. had been stealing stuff from her, and she wanted them kept safe.[9] The only reason his phone had incriminating evidence on it was because he and Cooper had switched phones a few days before. Another of the phones found in his car, he said, was B.F.'s boyfriend's phone. It

---

[8] He admitted he was "flirtatious" with her in the beginning and that he was so with girls on social media. "I talk to girls." He said, "I'm a guy." But he denied meeting her on social media. He said they met at a beauty shop where she and Cooper talked about hair.

[9] The gift cards, he said, had been given to Cooper as payment for braiding hair.

must have fallen out of his pocket when Appellant gave him a ride. Appellant said that Cooper had told him, post-arrest, that B.F. and her boyfriend had been trying to recruit her. But "she never told me that she prostituted or anything like that." Asked how Cooper, his live-in girlfriend of several years, had hidden her prostitution profession from him, he explained that (1) he didn't believe that she (or B.F. for that matter) had engaged in prostitution and (2) she was a grown woman and he gave her space to do her own thing. As an explanation for his decision to simply stop appearing for court after his April 16, 2015 jury setting, Appellant said he felt sad and felt betrayed, because "I'm a nice person. I don't do anything wrong to anybody."

At the close of evidence, Appellant's counsel noted on the record that there was an off-the-record jury charge conference. Then, he requested lesser-included offense instructions on "trafficking, compelling prostitution, prostitution, and . . . simple assault." Asked whether evidence supported those instructions, counsel said he believed "there was in substance." All the instructions were denied. The jury found Appellant guilty of the charged offense and sentenced him to fifty years' confinement.

**Appeal**

Appellant argued on appeal that he suffered harm as a result of the trial court's failure to give charges on the lesser-included offenses of human trafficking, compelling prostitution, and prostitution.  The State argued that the affirmative evidence Appellant pointed to on appeal as raising the lesser failed to negate other evidence establishing that he encouraged B.F. to engage in prostitution as early as December 2013 when he took her to a hotel to meet Cooper and explained to her details of the prostitution business, took the photos that featured the pair in the Backpage ads, and provided the transportation to meet the clients.

The court of appeals agreed that Appellant was entitled to the lesser-included instruction on trafficking of persons.[10]  First, the court noted that, as charged in the case, the only difference between the offenses of continuous trafficking of persons and trafficking of persons is that the offense of continuous trafficking requires proof that a defendant, "during a period that is 30 or more days in duration," engaged "two or more times in conduct that constitutes" trafficking.[11]  So, trafficking was included within the proof necessary to establish the charged offense of

---

[10] *Williams*, 582 S.W.3d at 628.

[11] *Id.* at 625.

continuous trafficking.[12]

Second, the court held that there was more than a scintilla of evidence from which a rational jury could conclude Appellant was guilty of only trafficking and not continuous trafficking.[13] The court pointed to the Backpage ads as evidence from which a rational jury could conclude Appellant was compelling B.F. to commit prostitution just from July 20, 2014, to August 5, 2014.[14] This is because Appellant was invoiced during that time, but the ads placed before July 20 and after August 5, 2014 were invoiced to Cooper under the name "Kandy."[15] Also, the jury could infer, from one of Cooper's text messages to B.F., that before July 20th, Cooper and B.F. were acting without his knowledge.[16] That text message, dated July 8th, stated, "Make sure Issac doesn't see you."[17] At trial, defense counsel argued this text message was evidence that Cooper and B.F. were doing something they did not want Appellant to know about. Finally, the court noted that the jury was free to disbelieve evidence

---

[12] *Id.*

[13] *Id*. at 627.

[14] *Id.* at 626–27.

[15] *Id.*

[16] *Id.* at 627.

[17] *Id.*

showing Appellant was committing the offense for a period more than thirty days, and believe Appellant's testimony that the reason his phone had incriminating evidence on it was because he had swapped phones with Cooper a few days before the arrest.[18]

The court held that "because Williams preserved error by requesting the lesser-included instruction," it would apply the "some harm" standard.[19]  It then found "some harm" because the jury charge permitted the jury to either convict Appellant of continuous trafficking or to acquit him altogether; the jury was denied the opportunity to consider the entire range of offenses presented by the evidence.[20]  The court reversed the judgment of the trial court and remanded the cause for a new trial.[21]

## Petition for Discretionary Review

The State filed a petition for discretionary review, arguing that Appellant did not preserve his request for the lesser-included offense of trafficking because he failed to identify any evidence supporting the

---

[18] *Id*. at 627–28.

[19] *Id*. at 628.

[20] *Id*. at 629.

[21] *Id*.

request and denied committing any offense. The State also argued that the court of appeals erred to conclude that the lesser-included offense of trafficking was a rational alternative to continuous trafficking and aside from that, misapplied the *Almanza* "some harm" standard. We granted review on all three issues.

As preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties, our inquiry into whether Appellant preserved this alleged error is appropriate.[22] And because we find that Appellant failed to preserve his request for the instruction on trafficking, we do not get to the State's arguments on the merits.

**Preservation of Defensive and Defensive-Type Charges**

Texas Rule of Appellate Procedure 33.1 provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific

---

[22] *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

grounds were apparent from the context; and (2) the trial court either ruled on the request, objection, or motion, either expressly or implicitly or, over a further complaint, refused to do so.[23] "The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection and affords him an opportunity to rule on it[;] and (2) it affords opposing counsel an opportunity to respond to the complaint."[24]

When it comes to jury instructions, trial courts are required to instruct the jury on "the law applicable to the case."[25] As we held in *Almanza v. State*, if a defendant complains on appeal about an erroneous instruction (or lack of a proper instruction) regarding an area of the law that is considered the law applicable to the case, the objection (or lack thereof) determines the applicable standard for assessing harm.[26] If a proper objection was made at trial to an error in the jury charge, reviewing courts determine whether the error caused the defendant some

---

[23] TEX. R. APP. P. 33.1(a).

[24] *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015).

[25] *See Delgado*, 235 S.W.3d at 249 ( "The trial judge has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged.").

[26] *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

harm.[27]  If no objection was made, reviewing courts determine whether the error caused the defendant egregious harm.[28]

But when the complained-of error is the lack of a defensive instruction, the *Almanza* framework does not apply.[29]  As we explained in *Posey v. State*, unrequested defensive instructions are still subject to ordinary rules of procedural default.[30]  A defendant cannot complain for the first time on appeal about the lack of a defensive instruction absent preservation of the error.[31]

Requests for lesser-included instructions, like requests for defensive

---

[27] *Almanza*, 686 S.W.2d at 171.

[28] *Id.*

[29] *See Posey*, 966 S.W.2d at 61 ("When, under general rules of procedural default, an appellate court holds a defendant has procedurally defaulted a particular claim by not timely raising it in the trial court, the appellate court does not concede that 'error' has occurred. In these situations, all the appellate court is saying is that it will not address the merits of a claim raised for the first time on appeal. This is important because *Almanza* does not apply unless the appellate court first finds 'error' in the jury charge."); *Tolbert*, 306 S.W.3d at 781–82 (concluding that "there was no jury-charge 'error' to which *Almanza*'s egregious harm analysis would apply" because "the trial court had no duty to *sua sponte* instruct the jury on the lesser-included offense of murder and that a jury instruction on this lesser-included offense was not 'applicable to the case' absent a request by the defense for its inclusion in the jury charge.").

[30] *Posey*, 966 S.W.2d at 61–62.

[31] *Id*. at 62 (deciding that a "defensive issue" is not "applicable to the case" unless the defendant "timely requests the issue or objects to the omission of the issue in the jury charge"); *see also Delgado*, 235 S.W.3d at 250 ("It is clear that the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one. Likewise, any error in the improper submission of a lesser included instruction is waived if the defense fails to object to the instruction.") (quoting 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 36.50 at 201 (Supp. 2006)).

instructions, "frequently depend upon trial strategy and tactics," so they are not considered "the law applicable to the case."[32]  Consequently, a trial court is not obligated to instruct on them absent a request.[33]  Article 36.14 provides guidance on preserving for review any exceptions or objections to the jury charge.[34]  It requires that the defendant either present his objections in writing or dictate them to the court reporter.[35] The objections "may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts."[36]

And specific to requests for lesser-included offenses, the defendant must point to evidence in the record that raises the lesser-included offense.  As we stated in *Hall v. State*, the defendant may rely on

---

[32] *Tolbert*, 306 S.W.3d at 780–81.

[33] *Id*. at 781; *Mendez*, 545 S.W.3d at 552 ("If the defendant fails to object to the absence of [defense-benefitting] instructions in the jury charge, the trial court will have committed no error at all; a trial court does not err by failing to instruct the jury on an issue that was, by virtue of the defendant's silence, simply inapplicable to the case.").

[34] *See* TEX. CODE CRIM. PRO. art. 36.14 ("Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof.").

[35] *Id.*

[36] *Id*.

"anything more than a scintilla of evidence" in requesting an instruction, but he is entitled to such an instruction (and the trial judge must include such an instruction) only when the evidence establishes the lesser-included offense as a valid, rational alternative to the charged offense.[37] Thus, if a defendant requests a particular lesser-included instruction and he sets out, on the record, the specific evidence that supports a rational basis for rejecting the greater offense but supporting the lesser offense,[38] the trial judge errs if he refuses to instruct the jury on that lesser offense.[39]

But general or insufficiently specific objections do not preserve error for appeal.[40] A defendant who files or dictates a laundry-list of objections to the charge must also specify the legal or factual reasons why he

---

[37] *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

[38] *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2012) ("[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.") (citing *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)).

[39] *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008) (A defendant is entitled to a jury charge on a lesser-included offense if he meets two requirements: (1) he requests an instruction on a lesser-included offense of the charged offense; and (2) there is "some evidence" that, if he is guilty, he is guilty only of the lesser-included offense.); *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985) ("If evidence from any source raises the issue of a lesser included offense, the charge must be given.").

[40] *See Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010); *Rogers v. State*, 105 S.W.3d 630, 639–40 (Tex. Crim. App. 2003).

believes himself entitled to such special instructions.[41] This requirement alerts the trial court, and the opposing party, of what strategic jury instructions the party wants and why he is entitled to them.[42] Again though, under Rule 33.1, if the grounds for the instruction are obvious to the court and opposing counsel, then error is preserved for appeal.[43] Thus, the trial judge errs only when he refuses to submit an instruction on an actual lesser included when (1) such specific evidence is manifest, or (2) the defendant points to the specific evidence that negates the greater offense but supports the lesser offense.[44]

## Application

Appellant requested the instruction of trafficking, but he did so in a laundry-list of objections and without specifying the legal or factual reasons he believed himself entitled to it—not on the record and not to the satisfaction of the trial court. At the close of evidence, Appellant's

---

[41] *Mays*, 318 S.W.3d at 384.

[42] *Id.* at 383.

[43] TEX. R. APP. P. 33.1(a)(1); *see Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("It is well established that, in order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context. A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is *obvious* to the court and to opposing counsel.").

[44] *See* TEX. R. APP. P. 33.1(a)(1)*; Hampton*, 109 S.W.3d at 440–41; *Flores*, 245 S.W.3d at 439.

counsel noted on the record that there was an off-the-record jury charge conference. Then, he requested lesser-included offense instructions.

> TRIAL COUNSEL: In this charge, we are asking that the lesser-includeds be placed in the charge. If we go through the definition of the charge, there are elements that we talked about in the informal charge conference: Human trafficking, compelling prostitution, prostitution, and then, there was evidence of a simple assault. So we believe that there is sufficient evidence for the jury to look at any one of those theories and find a lesser-included, and we ask for those charges to be—the lesser-included—

> THE COURT: Is there—was there any evidence elicited—and refresh my memory—that if he's guilty of any offense, he's guilty of the lesser only and not the greater?

> TRIAL COUNSEL: I believe there was in substance.

> THE COURT: Do—

> TRIAL COUNSEL: Okay. And then, the Court makes the ruling. It is what it is.

> THE COURT: Okay. That will be denied.

Appellant failed to point to any affirmative evidence that would support the submission of any of the requested lesser-included offense instructions. And, specific to the lesser of trafficking, Appellant failed to point to the facts like those he relied on in the court of appeals: that the Backpage ads placed before July 20, 2014 and after August 5, 2014 were invoiced exclusively to Cooper under the name "Kandy"; that Cooper's

text message to B.F. suggested Appellant was kept in the dark; and that one of his phones contained the history of Backpage activity because Cooper had "merged" her phone with his. None of this specific evidence was manifest because the defensive theory was that he did not commit any crime.[45]

Rather, before the request for the lessers, the trial court had heard Appellant testify in his defense and deny that he committed any offense at all. Appellant argues that his complete denial of the offense of trafficking does not, as the State would have it, automatically bar him from receiving a lesser-included offense instruction.[46]

But we are not addressing whether the instruction is warranted by evidence at trial. We are addressing, in the first instance, whether the grounds for the request would have been obvious to the trial court so that any error in failing to give the instruction was preserved for appeal. And they would not have been so here. The trial court asked whether there was evidence that negated the greater offense. Counsel's response, "I believe there was in substance[,]" failed to direct the trial court to specific

---

[45] *See Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992) (denial by the defendant of the commission of the offense did not raise the issue of a lesser-included offense).

[46] Brief for Appellant at 22–23.

evidence justifying the jury instruction. And, as the trial court started to ask another question, counsel cut the court off, saying, "Okay. And then, the Court makes the ruling. It is what it is." Because the evidence supporting trafficking as a rational alternative to the charged offense was not obvious, and Appellant failed to point to it, the trial court, reversed on appeal, was classically "sand-bagged."[47] The reason the contemporaneous objection rule exists is to give the trial judge an opportunity to make a given ruling and to get it right.[48]

Perhaps at the charge conference Appellant provided more clarity regarding his requests for jury instructions on lesser-included offenses. But the appealing party carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented.[49] The record in this case does not contain a bill of exception providing the substance of the

---

[47] *See Mays*, 318 S.W.3d at 383 ("The purpose of the *Posey* rule [requiring a party to preserve a challenge to the trial court's instructions on a defensive issue by making a timely request or objection] is to prevent the party from 'sandbagging' the trial judge by failing to apprise him, and the opposing party, of what defensive jury instructions the party wants and why he is entitled to them.").

[48] *See Ex parte Medellin*, 280 S.W.3d 854, 860 (Tex. Crim. App. 2008) ("[A] a contemporaneous objection permits the trial judge to remedy potential error before it occurs.").

[49] *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016); *Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006). *See also United States v. Redd*, 355 F.3d 866, 873–75 (5th Cir. 2003) (finding defendant failed to properly object to the jury instructions on attempt and the impossibility defense, where charge conference was held in chambers and off-the-record; objections "could meet the specificity requirement only by incorporating the referred-to discussion in chambers").

off-the-record charge conference.[50]  Nor is the substance of it somehow otherwise reflected in the record.[51]

Minus the benefit of any off-the-record argument, Appellant's justification for the instruction on trafficking was that evidence "in substance" raised it.  Such an objection does not meet the specificity requirements of Rule 33.1 or Article 36.14.[52]  Appellant, under the discrete facts here, has failed to preserve error because he failed to specify what facts or legal theory would support submission of the lesser of trafficking and that theory was not otherwise obvious.[53]

---

[50] TEX. R. APP. P. 33.2 ("To complain on appeal about a matter that would not otherwise appear in the record, a party must file a formal bill of exception."); *Cf. Haygood v. State,* 127 S.W.3d 805, 811 (Tex. App.—San Antonio 2003, pet. ref'd) ("At 1:25 p.m. the hearing reconvened on the record, in the presence of the State, defense counsel, and defendant. Defense counsel asked that a bill of exception be made about previous discussions held off the record about the medical records.").

[51] *Cf. Gomez v. State*, 552 S.W.3d 422, 427–28 (Tex. App.—Fort Worth 2018, no pet.) ("Although there is no objection in the record to Officer McCraw's statement, immediately following the statement, Appellant's counsel requested a bench conference. The conference that followed was held off the record, but judging from the trial court's statements and questions of Officer McCraw immediately afterward, the trial court understood Appellant's objection as relating to inadmissible evidence of extraneous offenses. This is also the argument Appellant puts forth on appeal, and the State does not dispute that this was the concern expressed by Appellant during the conference.").

[52] TEX. R. APP. P. 33.1(a)(1)(A) (requiring a statement of the grounds for the ruling sought "with sufficient specificity" to make the trial court aware of the complaint, unless the specific grounds are apparent); TEX. CRIM. PROC. art. 36.14 (defendant or counsel "shall present his objections thereto in writing, distinctly specifying each ground of objection.").

[53] *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.").

## Conclusion

Appellant let the trial court know what he wanted: an instruction on the offense of trafficking. But he did not let the trial court know—when asked to do so—why he thought he was entitled to it.[54] Appellant did not point to evidence that would support a valid, rational alternative to the greater offense. We reverse the judgment of the court of appeals and remand the case for consideration of Appellant's other points of error raised there and not addressed.

Delivered: May 26, 2021

Publish

---

[54] *See Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).